FRANCIS J. HOUGHTON *v.* PERRY G. COOK AND A. B. BEEMAN.

PERRY G. COOK *v.* FRANCIS J. HOUGHTON.

October Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Motion for reargument heard at the February Term, 1917.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed March 3, 1917.

*Leases of Real Estate—Construction—Conditions Subsequent—Findings of Fact—Breach of Covenant—Knowledge of Lessor—Waiver of Breach—Tender of Rent—Demand—Forfeiture—Extension of Lease—Conditions Precedent—Equitable Relief—Mortgages—Option to Purchase—Consideration for Lease—Inequitable Conduct of Lessor—When Time is of the Essence of Contract—Equities Between Parties—Right to Recover Damages for Breach of Covenant—Rehearing—P. S. 1313-1316—Grounds for Rehearing—When not Granted—Leased Property in Hands of Receiver—Interest upon Unpaid Rent.*

The breach of a condition subsequent, contained in a lease of real

estate, with the right to enter thereon, does not in itself terminate the lessee's interest, but such breach is ground for forfeiture, which is optionable with the lessor to claim or waive, and, if claimed, the purpose of the lessor must be evinced by some distinct and positive act.

A finding by a special master that there was no evidence to show that breaches of covenant on the part of a lessee of real estate were brought to the attention of the lessor. prior to a certain date is not equivalent to a finding that he had no knowledge of them prior to ·that date.

Where a lease of real estate contained certain covenants, breach of which gave lessor the right of entry, and also contained a provision for annual extensions, the lessee could rely upon each annual extension of the lease as a waiver of the lessor's right to insist upon a forfeiture on account of previous breaches of covenant.

Strict performance as to time in a covenant for payment of rent contained in a lease of real estate may be waived by a long course of dealing between the parties.

A tender of rent after it is due, but before a declaration of forfeiture of the lease by the lessor, will preclude the lessor from thereafter declaring a forfeiture for this reason.

Where the covenant in a lease of real estate as to payment of taxes by the lessee is general, and nothing appears as to the methods and times of collection nor the time when any penalty or lien affecting the lessor's rights would supervene, demand· must be made on the lessee to pay the taxes before a forfeiture can be claimed.

Where it is not found by the master that the practice of a lessee of real estate to delay payment for insurance until after it was due was not known to the lessor, it cannot be presumed that it was so known.

Where there is no finding that lessor's farm was injured by the loss of crops, caused by lessee's want of good husbandry, in violation of a covenant in the lease, there is no basis for a judgment of forfeiture of the lease; and it is not a necessary conclusion that the injury to the crops resulted in appreciable injury to the land, this being a question of fact for the trier, and not a matter for the consideration of the court.

Under the circumstances, *held*, the master's findings amounted to the finding of a waiver on the part of lessor of lessee's covenant to repair.

Where a written lease of real estate provided for its extension from year to year, if all the covenants of the lessee had been fully performed, the obligations imposed upon the lessee by the covenants in question, although conditions subsequent in their relation to the current term, were conditions precedent to an extension of the lease.

A performance of covenants in a lease of real estate which may serve to prevent a forfeiture thereof, is not the measure of the performance required by a provision therein which makes faithful and legal performance the condition of an extension.

A court of equity will not grant relief from the breach of a condition precedent where the default is due to neglect, unless in very special circumstances.

Under the circumstances, *held,* this case is not a proper one for equitable relief from the breach of a condition precedent.

A provision in a lease of real estate that the lessee is to have a deed of the property upon making certain payments, having been ascertained not to be the defeasance of a mortgage, is to be given effect as an option to purchase, and the lessee by failing to tender performance on the last day of the term does not lose his right to purchase under such circumstances that equity will not grant relief.

The privilege of a lessee of purchasing the premises, contained in a lease of real estate, is not a mere offer, but is a part of the consideration for the stipulations in the lease, and any performance thereof by lessee is the payment of some consideration towards the acquisition of the land; and any inequitable conduct on the part of lessor which would naturally make it impossible for lessee to make the required payments within the time provided in the lease may properly be considered in determining whether the lessee should be given further opportunity to purchase.

Equity does not consider the mere fixing of a definite date for performance as making time of the essence of a contract; but, to have this effect, there must be something in the terms or nature of the contract indicating that the date fixed was so regarded.

Under the circumstances, *held,* the case discloses no change of circumstance subsequent to the expiration of the lease which will make it inequitable as regards the lessor, to allow the lessee to avail himself of the provision in the lease with regard to purchasing the premises after the time fixed therein for so doing had expired.

In determining the equities under a bill brought by a lessee of real estate, asking for leave to purchase the premises as provided for in

the lease after the time fixed therein for so doing had passed, any matters of indebtedness owing from lessee to lessor, which might have been recovered as damages in an ejectment suit brought by lessor against lessee, if there had been a forfeiture of the lease, are to be considered.

The fact that a lessor of real estate has waived the breach of a covenant to repair as the basis of a forfeiture of the lease does not defeat any right the default might give him as a ground for the recovery of damages against the lessee.

A former lessee of real estate, who has become the owner of the premises, under a provision in the lease giving him an option to purchase, cannot justly be required to pay the former lessor damages for the depreciation of the buildings caused by his breach of a covenant to repair, during his occupancy under the lease.

By P. S. 1313-1316, no new right of rehearing in suits in chancery was enacted, but the right to rehear after mandate had been sent down was extended to the Supreme Court, and the same pawers previously exercised by the chancellor were given to it.

The Supreme Court will not grant a rehearing in a suit in chancery after mandate sent down for the purpose of affording an opportunity to present new questions.

Failure fully to present a case or to give sufficient attention to the argument on a former hearing does not, in a court of last resort, afford ground for rehearing.

A rehearing in a suit in chancery after mandate sent down will not be granted where all the facts upon the petitioner relies were known to him at the time of the original hearing, and which were claimed by him at that time to be immaterial.

A party will not be allowed to set up a claim in one part of a case to procure a result in his favor and then make a claim directly opposed to it in another part of the case.

A rehearing in a suit in chancery will not be granted upon a claim not made in the bill of complaint nor reserved by the terms of a lease to enforce which the suit was brought.

Where leased property passed into the possession of a receiver, in a suit brought against the lessee by a third person, a claim that no interest upon unpaid rent should be charged against the lessee after the receiver took possession, is without foundation.

Two cases heard together. The first case was an action of

ejectment. Plea, the general issue. Trial by court on the report of a referee at the September Term, 1913, Franklin County, *Slack*, J., presiding. Judgment for plaintiff. Defendant excepted.

The second case was a suit in chancery, brought by one of the defendants in the action at law against the plaintiff therein, praying for the specific performance of a certain lease of the property involved in the ejectment suit, and for leave to redeem by paying what was due thereunder, and for an injunction restraining the plaintiff in this action at law from interfering with his possession and control of the property. The injunction was granted during the pendency of the suit and the cause was referred to a special master, who was also the referee in the ejectment case, and who heard both cases at the same time. The suit in chancery was heard demurrer to the bill of complaint, and report of the special master, at the same term as the ejectment case. before the same judge, sitting as chancellor. Decree, dismissing the bill. The defendant appealed. The opinion states the case.

*H. P. Dee* and *M. H. Alexander* for Cook and Beeman.

*C. G. Austin & Sons* for Houghton.

MUNSON, C. J. This controversy grows out of the lease of a farm and personal property thereon, executed by Francis J. Houghton to Perry G. Cook, and is presented in two cases which have been heard together. The first of these is an ejectment suit brought by Houghton against Cook and A. B. Beeman; Beeman being surety on the lease for Cook's performance. The second is a bill in equity brought by Cook against Houghton, in which the ejectment suit was enjoined. The cases were tried together on references, by a trier herein called the master, and the facts were embodied in one report, on which the cases were disposed of below.

The lease was for one year from February 15, 1901, with a provision that the term might be extended another year, and so from year to year, by an agreement in writing on the day of the expiration of a term or previous thereto, provided all the covenants and agreements of the lessee were fully performed. The

lessee was to use the premises in a husbandlike manner, commit no waste, keep the premises in as good repair as they were in when taken, keep the buildings fully insured, and pay all taxes and an annual rent of $200. The lessor was entitled by the terms of the lease to reenter on a failure of the lessee as to any covenant or agreement. The lease contains a further provision by which the lessee was entitled to a deed of the premises at the expiration of any year on paying $6,500, and all back rent and taxes then due and equitable for him to pay. In conclusion it is provided that the lessee's death shall terminate the entire indenture as to himself, his heirs, executors, administrators or assigns.

The lease was extended by written agreements under the provision above stated, in language substantially identical, until 1909, when an addition was made to the agreement as before written, which gave Cook the preference as to rental, provided he paid as much as any other competent man would pay. This was not repeated in the subsequent extension writings. After this the lease was extended annually until 1912,—the last extension ending February 15, 1913. November 9, 1912, Houghton gave Cook written notice that he should not further extend the lease, and that he must vacate the farm and surrender the personal property thereon on the 15th day of February, 1913. The writ of ejectment was served on the eighth day of the preceding January.

The plaintiff in ejectment seeks to recover because of the non-payment of rent, taxes and insurance, the want of good husbandry, and the failure to keep the buildings in repair. Certain failures of the lessee in these respects during the last year are presented in the report. The rent due May 15 was paid July 7, but the rent due December 15 was not paid. It was, however, at some date in December not specified, tendered and refused. The taxes for 1912 were paid by Cook February 1, 1913, which was after the ejectment suit was brought, but within the term. The insurance payable in August, 1912, remained unpaid until paid by Houghton January 18, 1913. Cook had no knowledge of this payment until he went to the agent to make the payment sometime in January or February. There was a lack of good husbandry in getting in the grain crops and in harvesting the hay and grain, which resulted in serious

injury to the crops. The buildings on the premises have deteriorated materially during the lessee's occupancy of twelve years from the want of ordinary repairs. The depreciation is put at $300.

The defendant in ejectment claims that no failure in meeting the requirements of the lease sufficient to constitute a breach has been shown; and also relies upon the previous conduct of Houghton as a waiver of his right to insist upon a forfeiture for any failure that may be considered a breach. This calls for a reference to further matters bearing upon the question of waiver. It is found that in most instances payments of rent were made at some period shortly after the exact day on which they were due, and that these were accepted as full payment without the addition of interest or any objection on that ground. The report discloses nothing regarding the taxes except that Cook paid them at a certain date. It is found to have been Cook's custom for some years not to pay the insurance when due. The findings indicate that he made the payments to a local agent, but nothing appears as to how the. business was carried, or as to whether Houghton had any knowledge regarding it. It appears that in the spring or early summer of 1911 Cook had a conversation with Houghton about the letting of a contract for certain repairs and improvements which he contemplated making on the buildings, and for which he had made preparations by getting out lumber, and that Houghton told Cook to wait awhile about doing this, and never instructed him to go further. It is found, however, that in saying this Houghton did not refer to ordinary repairs but to the extensive improvements which Cook proposed to make. But there is a further finding that these improvements, if they had been made, would have included all ordinary repairs necessary. The bad husbandry found by the master occurred in the summer and fall of 1912, and it does not appear that anything was said to Cook about it before the ejectment writ was served. The master says that Houghton is an aged man, who is physically incapable of visiting the farm, and has not been there for many years; and that there was no evidence to show that breaches of covenant were brought to his attention prior to December 18, 1912.

The notice sent by Houghton was a refusal to extend the lease. There being no extension, the lease would expire by its

own limitation, without notice to quit, February 15, 1913. There was no provision of conditional limitation which could determine the estate earlier by operation of law. The lease has no forfeiture clause other than that authorizing a reentry. The breach of a condition subsequent, with the right to enter thereon, does not in itself terminate the lessee's interest. Such a breach is the ground of a forfeiture, but the forfeiture arises, from the lessor's act. It is optional with him to claim a forfeiture or to waive it, and if he would treat the breach as a forfeiture he must promptly evince his purpose by some distinct and positive act.

The master's statement that there was no evidence to show that breaches of covenant were brought to Houghton's attention prior to December 18, 1912, is not equivalent to a finding that he had no knowledge of them prior to that time. What he may be presumed to have known regarding his affairs may be a matter for consideration. Certainly the lessee could rely upon each annual extension of the lease as a waiver of the lessor's right to insist upon previous failures as the basis of a forfeiture. The deficiencies reported, other than those affecting the buildings, relate to matters which occurred during the last extension, and these are now to be considered as bearing upon the lessor's right to maintain ejectment.

Touching the covenant to pay rent, it is clear that strict performance as to time had been waived by a long course of dealing. Moreover, there was no declaration of forfeiture until the bringing of the suit, and payment was tendered before suit; and it is well settled that a tender of rent after it is due but before a declaration of forfeiture will preclude the lessor from thereafter declaring a forfeiture. *Moran* v. *Lavell,* 32 R. I. 338, 79 Atl. 818, Ann. Cas. 1912 D, 1007, and note. It is held by some courts that before the lessor can enforce a forfeiture for the breach of a convenant to pay taxes he must make a demand on the tenant to pay them. See *Carpenter* v. *Wilson,* 100 Md. 13, 59 Atl. 186. This may properly be the holding here, where the requirement of the lease is general, and nothing appears as to the methods and times of collection, or the time when any penalty or lien affecting the lessor's rights would supervene. It is found that Cook's failure to pay the insurance due in August, 1912, was in accordance with a practice of several years' standing, but it is not found, and cannot be presumed, that this practice was

known to Houghton. It does not appear, however, but that the insurance was securely arranged for by the lessee and continuously kept in force, and as long as the buildings were insured there was no breach.

The master has found a want of good husbandry in the raising and harvesting of crops during the season of 1912, but has negatived any resulting injury to the stock. The rent was payable in cash and not in kind, and the lessor had no direct interest in the crops, even by way of a lien. It is not a necessary conclusion that the injury to the crops of a single season to the extent described by the master resulted in any appreciable injury to the land through the loss of manurial substances. This was a question of fact for the trier, and not a matter for the consideration of the court. See *Wing* v. *Gray*, 36 Vt. 261. The master has not found that the farm was injured by the loss of the crops, and the lessee's failure in this respect affords no basis for a judgment of forfeiture.

The remaining default relied upon to sustain the judgment is the failure to repair the buildings. The master has reported the conversation relied upon by the lessee to excuse his failure in this respect, but has not in terms found the fact of waiver. If the facts reported were to be treated merely as sufficient to justify an inference of waiver, they could not avail the lessee; for the court did not draw the inference, but gave the plaintiff judgment for an amount which must have included the sum assessed for the deterioration of the buildings. But the conversation reported is capable of only one construction, and we think the master's findings amount to a finding of waiver. The subject matter itself requires the conclusion that Houghton was acting with knowledge of the default. His directions to Cook regarding the proposed improvements, although not intended to excuse the making of ordinary repairs, justified Cook's understanding of them, and must be held to have charged Houghton with the duty of giving notice and an opportunity to repair as preliminary to a claim of forfeiture.

In taking up the equity branch of the case it becomes necessary to state further findings of the master. It is found that the value of the farm at the time the lease was made was $6,000, and that its present money value is $8,000; but that this gain is solely by reason of the general increase of the value of farming prop-

erty in that vicinity. An inventory attached to the lease as a part of it values the personal property at $1,250, and says that at the end of each year it is to be accounted for at that value in the same or like personal property. The master finds that the personal property on the farm at the date of the lease was worth $1,250, and that the value of the personal property there when the ejectment suit was brought was $3,340. It was provided in connection with this inventory that on giving proper security Cook might sell or exchange the live stock on the farm at his discretion, and pay the avails to Houghton or reinvest the avails in other live stock to remain on the farm; and under this provision Cook made sales of live stock from time to time and replaced it with other property of like nature. Some of the property is covered by liens and mortgages which are the subject of litigation, and purport to secure over $600. In some instances Houghton knew that Cook sold horses from the farm and bought others, taking the money received and paying for horses bought. Some, at least, of the money borrowed on chattel mortgage was used to buy stock for the farm. Houghton bought two horses that went on the farm, and sometimes bought cows to replace cows that had died. During the whole period it was Houghton's practice to reimburse Cook for the expense of any repair made.

December 18, 1912, Houghton brought a suit against Cook on claims for money held in a fiduciary capacity and attached his body. December 23, Houghton sued Cook on certain notes, and trusteed the parties who had the milk from the farm. On the following day writs were served on Cook in favor of two other creditors. Until the bringing of these suits Beeman was perfectly willing to renew his obligations under the lease at the end of the rent period, but after that he was not willing. December 26, Beeman sued Cook on certain notes and accounts. The writ in this ejectment suit was dated December 23 and served January 8. Bail to the amount of $7,000 was required in this case, and Cook and Beeman were both arrested and held in custody until the bail called for was furnished. The bringing of these suits against Cook and the attachment of all his property made it impossible for him to raise money or do business. The suits brought by Houghton were largely instrumental in producing this situation, but the master, although requested, does not find that they were brought for any improper purpose. In

response to a request of Houghton for a finding that Cook is wholly unable to perform the conditions of the lease, and that he cannot execute a tender of redemption, the master says there is no evidence to show whether Cook can execute such a tender, but he makes the finding that if Cook is not entitled to a conveyance of the farm and personal property for $6,500 and accrued rent, etc., he is insolvent, and that if he is entitled to such a conveyance on making such payments he is solvent.

It appears that prior to and until 1880 there was an indebtedness from Cook to Houghton, secured on Cook's interest in this property. Early in that year Cook and his wife executed a deed to Houghton conveying the Cook farm, except a homestead and dower interest. Later in the same year they executed to Houghton a mortgage conveying the Cook farm. By a deed dated January 15, 1901, which is the date of the lease, Cook conveyed to Houghton the Cook farm, including the dower interest. It is found that in January, 1901, or shortly before, Cook became involved in financial troubles, and that Houghton, knowing of this and of the fact that Cook had then acquired control of the whole farm, was pressing him to do something about his indebtedness or give him more security. Cook's counsel claimed throughout the hearing that the deed and lease constituted a mortgage, and claimed before the close of the hearing that the debt secured was $4,000 and interest. The master says he is unable to find that the parties intended this to be a mortgage, and finds as a fact that the intent of the parties was fully expressed by the lease; and says further that he is clearly of the opinion that until near the close of the hearing Cook understood that whatever right of redemption or purchase he had was for the sum of $6,500.

In proceeding we give the parties the designations pertaining to the chancery suit. The orator prays in his bill for a specific performance of the obligations of the lessor, mentioning particularly performance "as to the matter of renting"; which evidently relates to the clause of the lease which provides for extensions of the term from year to year. The orator now argues that he had a right to demand a renewal of the lease at any time before February 15, by tendering Beeman as surety. By a petition filed subsequent to the hearing the orator asks leave to redeem. The petition does not specify the ground on which the right of redemption is claimed. It was claimed on the hearing

that the orator was entitled to a mortgagor's right in this respect. The orator's brief states the inquiry to be whether the covenants and conditions contained in the lease amount to an equitable mortgage. In subsequently presenting the point more fully, the brief definitely places the claim upon the clause which entitles the lessee to a deed at the end of any year on payment of $6,500 and all back rents and taxes. In no place has the orator referred in terms to this clause as giving a right of purchase. The only prayer not above stated is that for general relief.

The defendant claims that the bill should be dismissed because the orator failed to perform conditions precedent to extension, and because his failure to perform entitled the lessor to reenter, and because through these failures the lease came to an end by its own limitation. His brief does not specifically question the orator's claim that performance entitled him to an extension regardless of the lessor's concurrence. As the case stands, the notice sent by the defendant was an assertion of his right to refuse an extension independent of a breach, for no breach is shown to have come to his attention at the time it was sent. But there having been substantial failures of performance on the part of the orator, it will not be necessary to inquire as to the construction of the extension clause in these respects, for it is clear that the orator's right to an extension depended upon his having performed or been excused from performing his obligations of the previous year. It is evident that the obligations imposed upon the lessee, although conditions subsequent in their relation to the current term, were conditions precedent to an extension of the lease.

The orator claims that he is entitled to a specific performance of the provision for an extension. But he was entitled to this only when his covenants and agreements for the preceding year had been faithfully and legally performed. It is evident that there was a substantial failure to meet this requirement. A performance which may serve to prevent a forfeiture is not the measure of the performance required by a provision which makes faithful and legal performance the condition of an extension. The orator insists, however, that he had until February 15 in which to perform. But the power to exercise good husbandry for that year had gone, and the belated payment of the money obligations would not be the fulfillment contemplated by the re-

quirement.   The only question is whether equity will relieve the
orator from the consequence of these. defaults.   It is sometimes
said that it is not in the power of a court of equity to relieve from
the breach of a condition precedent.   It is certain that relief will
not be granted when the default is due to neglect, unless in very
special circumstances.   We think the case presented is not a
proper one for this relief.

The court cannot allow a redemption on the ground that the
transaction was a mortgage, for the master has found that it was
not a mortgage.   There is nothing that indicates, and the orator
does not claim, that his failure to secure a finding that the trans-
action was a mortgage was because the master was governed in
determining the issue by any misapprehension as to the measure
of proof required in such cases.

The orator contends that Houghton's suits against himself
and Beeman, brought at the time and in the manner they were,
were oppressive and unlawful, and were intended to make it im-
possible for the orator to meet the requirements and conditions
of the lease; and that he is entitled to have damages assessed
therefor and allowed in offset to any amount that may finally be
adjudged to Houghton.   Whatever the effect of the suits may
have been, the master has failed to find that they were brought
for any improper purpose, and it is difficult to see how they can
be given any direct effect upon the disposition of the case.

It being ascertained that the provision for the execution of
a deed to Cook upon the making of certain payments is not the
defeasance of a mortgage, it must be given effect as an option to
purchase, and the question is whether Cook, by his failure to
tender performance on the last day of the term, has lost his right
to purchase under such circumstances that equity will afford no
relief.   We think not.   This privilege of purchase is not a mere
offer, but is a part of the consideration for the stipulations of
the lessee, and any performance of his stipulations was the pay-
ment of some consideration towards the acquisition of the deed.
In this view, any inequitable conduct of the lessor which would
naturally render it impossible for the lessee to make the required
payments seasonably, may properly be considered in determining
whether the lessee should be given a further opportunity.   The
extraordinary amount of bail which Cook was compelled to pro-
vide to secure his release from imprisonment was an oppressive

14

burden which would naturally tend to prevent the raising of the large sum needed to effect the purchase. But it is not necessary to look specially for inequitable conduct on the part of Houghton as affording a basis for this relief. Equity does not consider the mere fixing of a definite date for performance as making time of the essence of the contract. There must be something in the terms or the nature of the contract to indicate that the date fixed was so regarded. *McLean* v. *Windham, etc., Co.,* 85 Vt. 167, 182, 81 Atl. 613. There is nothing in the provision that the lessee may purchase the property at the end of any year that in-. dicates a purpose to cut off this equitable relief, if otherwise proper in the circumstances. The provision is one that might naturally be expected in a lease which contemplated a continu- ance by extensions throughout the life time of the lessee. The case discloses no change of circumstances subsequent to the ex- piration of the lease that will make the allowance of this remedy inequitable as regards Houghton.

Although the judgment in ejectment is not sustained, any matters of indebtedness which might have been re- covered as damages in the ejectment suit, if there had been a forfeiture, are to be considered in determining the equities under the bill. But the payment of the rent is provided for by the lease, for the orator is entitled to a deed only on the payment of the rent due in addition to the $6,500. The fact that the lessor has waived the failure to repair as the basis of a forfeiture would not defeat any right the de- fault might give him as a ground for the recovery of damages; but as the case stands it is not necessary to inquire whether he has any such right. If the lessee should become the owner of the property under his right of purchase he could not justly be required to pay in whole or in part the amount assessed for the depreciation of the buildings, for the lessor would get the full value of the property as agreed upon, and the loss would fall upon the lessee as purchaser. If the lessee does not purchase, he is given no other remedy which could be conditioned upon the making of such a payment.

In the action at law
*Judgment reversed and judgment for defendant.*

In the equity suit
*Decree reversed and cause remanded with mandate.*

## ON MOTION FOR REARGUMENT.

MILES, J.   After this cause was heard and the mandate sent down, the orator brought it to this court under secs. 1313 to 1316 inclusive of the Public Statutes for a rehearing as to the time in which he was required to exercise his option to purchase the property mentioned in the mandate; also upon the matter of interest, and upon his right to redeem the personal property without redeeming the real estate.

He claims that he cannot redeem the property as it is now situated, being in the hands of and subject to a receiver and subject to various liens by way of attachments, conditional sales and mortgages, rendering it impossible for him to sell or encumber the same to raise money with which to make the purchase. He also claims that he should not be required to pay interest on the purchase price after the property came into the possession of the receiver, and that he should be allowed to redeem the personal property without redeeming the real estate.   He bases this last claim upon the clause in the lease reading as follows, *viz:* "Said inventoried property is now valued at ($1,250) twelve hundred and fifty dollars, and at the end of each year is to be accounted for at that value in same or like personal property."

The defendant filed a motion to dismiss the petition on the ground that it disclosed no error, inadvertence or mistake in the mandate.

Before the passage of secs. 1313 to 1316 inclusive of the Public Statutes, rehearings were had before the chancellor after mandate was sent down, in causes where this Court through inadvertence had erred or had been mistaken respecting matters regularly before it; but the court of chancery could not depart from the plain directions of the mandate and must conform its decree to the mandate so far as the Supreme Court had adjudged.   *Gale* v. *Butler,* 35 Vt. 449; *Canerdy* v. *Baker,* 55 Vt. 578; *Railroad* v. *Bixby,* 57 Vt. 548.

These cases further hold that every decision of the Supreme Court should be final; but that error, inadvertence and mistake are not "decision", and where either occur in a mandate the chancellor could rehear as to those matters, if equity demanded; but beyond these limitations the chancellor had no right to go. The grounds upon which a chancellor could rehear a cause sent down on mandate was also limited to substantial errors, inad-

vertences and mistakes apparent upon the papers and pleadings in the case. *Canerdy* v. *Baker, supra.*

By the passage of the act which now constitutes secs. 1313 to 1316 inclusive of the Public Statutes, no additional right of rehearing was created. That act simply extended the right to rehear to this Court, after the case had been sent down on mandate, and gave to it the same power previously exercised by the court of chancery. *Van Dyke & Drew* v. *Cole,* 81 Vt. 399, 70 Atl. 593, 1103; *Cunningham et ux.* v. *Blanchard et al.,* 85 Vt. 501, 83 Atl. 469.

This Court will not grant a rehearing after mandate sent down for the purpose of affording an opportunity to present new questions; (*Van Dyke & Drew* v. *Cole, supra; Cunningham et ux.* v. *Blanchard et al., supra*); and it is a general rule that failure to present a case fully or to give sufficient attention to the argument on a former hearing, does not, in a court of last resort, afford ground for granting a rehearing. *Cunningham et ux.* v. *Blanchard et al., supra,* and cases cited.

Applying these principles to the case before us, can it be said that the orator is entitled to a rehearing on any of the grounds set forth in his petition?

In the prayer of his original bill he asks for an injunction restraining the defendant's ejectment suit, and the same was granted and the orator has already received all the benefit on account of that injunction that could be given him, that suit having been decided in his favor. He further asked, in substance, to be reinstated under the lease; but after full and careful consideration of the master's report, as appears in the opinion in this cause, this Court held that the orator was not entitled to such relief. He also asked for leave to redeem the property covered by the lease, and for an accounting. A full hearing was had by this Court upon all these matters before the mandate was sent down, and the master's report upon them was carefully considered, and, as the mandate shows, leave was granted the orator to redeem the property covered by the lease by way of purchase, and the sum due the defendant from the orator upon the purchase was fixed according to the findings of the master.

In relation to the orator's claim that the time limited for the payment of the purchase price is too short, it appears that all the facts upon which he relies were well known to him at the time of the hearing before the master and so at the time the

case was heard on appeal. In his brief on the hearing on appeal, referring to the claims and suits of other parties, being the facts upon which he now relies, the orator says: ''If the orator is decreed the right to redeem or to specific performance, as claimed, these matters are wholly immaterial and need not be considered in this Court.'' If these matters upon which he now relies were ''wholly immaterial'' then, in the absence of anything showing a change of conditions now from what they were then, it follows that they are wholly immaterial now and afford no reason or ground for a rehearing, and nothing now appears indicating that the decision upon which the mandate was made was the result of inadvertence, error or mistake. A rehearing upon this ground is therefore denied.

Upon the orator's claim that he cannot comply with the mandate within the time limited because of his financial condition, a reference to the master's report and the orator's brief is all that is necessary to answer that claim.

The master has found that if the orator has the right to redeem he is solvent, and the orator in his brief on appeal, argues that he is financially able to redeem and is entitled to have that privilege. This Court will take the orator at his own words, and in the circumstances of the case, it would be a departure from the principles stated in the foregoing cases cited above, to grant a rehearing on this ground; besides it is without precedent to allow one to set up a claim in one part of a case to procure a result in his favor and then make a claim directly opposed to the first in another part of the case. A rehearing is denied upon this ground.

Upon the orator's claim that he should be allowed to redeem the personal property without being required to redeem the real estate, it is a sufficient answer that no such claim is made in the bill and the lease reserves no such right.

Respecting the orator's claim that no interest should be charged against him after the property passed into the possession of the receiver, for the reason that he has not been receiving anything from it, it appears that he has not been deprived of that possession through any fault or wrong of the defendant; that the possession was taken from him by an independent proceeding instituted by a third party; therefore, the defendant, not being responsible for this situation, cannot be deprived of an equitable right because of the act of a third party over whom he has no

control, and the decree of the court giving the orator a right to purchase under the terms of the lease, rests upon the equitable ground that the defendant shall lose nothing by allowing the orator to purchase at a date later than the one provided in the lease. By the terms of the lease the orator should have paid the rent and the $6,500 on or before February 15, 1913, to entitle him to purchase. Failing to do so he lost his legal right to purchase the property, but equity, with its more flexible remedy, could do what was done in this case, if it preserved the rights of the defendant, and to preserve the equitable rights of the defendant it was necessary that he should be given a sum sufficient to equal the value of the unpaid rent and the $6,500, if the same had been paid according to the terms of the lease, which would be those sums and the interest on the same to date of payment, as given in the mandate.

*Petition dismissed with costs and cause remanded.*