## Rosemary Zurmuhlen v. Chris Uchida

[569 A.2d 480]

No. 87-134

Present: Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned

Opinion Filed November 17, 1989

*Timothy Martin* of *Carroll, George & Pratt,* Rutland, for Plaintiff-Appellant.

*Clark, Lillie & Holden,* Bennington, for Defendant-Appellee.

**Dooley, J.** Plaintiff, the owner of business premises in Manchester Center, Vermont, brought this eviction action against defendant, who leased the premises and ran a retail clothing business, because defendant had made extensive renovations in the property in violation of the lease agreement. The trial court held for defendant lessee on the ground that plaintiff lessor waived her right to terminate the lease. We affirm.

The parties entered into the six-year lease agreement in late 1983. Article VIII of the lease provides in part:

> Lessee agrees that it will not make any alterations in or upon the Premises or any part thereof, which affect the structure, walls, floors, heating, plumbing and electrical equipment without Lessor's consent in writing, to such alteration.

Article XXVIII provides in part:

> A. Lessor may terminate this Lease in any of the following circumstances:
>
> 1. If Lessee shall be in default in the performance of any covenant of this Lease. If such default is not cured by Lessee within thirty (30) days of receipt of notice of such default by Lessor, or if such default [is] of such nature that it cannot be cured completely within such thirty (30) day period, if Lessee shall not have promptly commenced within such thirty (30) day period to cure such default and shall not thereafter proceed with reasonable diligence and good faith to remedy such default, the Lease shall terminate as provided in subparagraph B below.
>
> . . . .
>
> B. Provided that Lessor shall have given the appropriate written notice of default as set forth in subparagraph A above, this Lease shall terminate as completely as if that were the date herein definitely fixed for the expiration of the Term of this Lease, and Lessee shall then surrender the real and personal property to Lessor. If this Lease shall

so terminate, it shall be lawful for Lessor to reenter the property, without formal notice, or demand, either by force or other means and remove Lessee therefrom.

At the time the parties entered into the lease agreement, plaintiff also sold her retail clothing business to defendant, who thereafter operated the business on the premises. During the negotiation for the lease and sale, the parties discussed the possibility that defendant might renovate the premises. In early 1985, renovation discussions continued. At this time, the trial court found, "[t]he plaintiff made several general statements that changes were okay with her, that she trusted the defendant's taste and judgment, that the defendant could make any changes she wanted, [and] that the plaintiff did not need to see a list of changes or sign one."

In September of 1985, defendant presented a document describing the planned alterations to plaintiff, and asked for her written approval. Plaintiff refused to sign unless the defendant agreed to an increase in rent. This condition was repeated in a letter by plaintiff's attorney on October 3, 1985.

Defendant's attorney responded by letter on October 15, 1985, advising plaintiff that defendant would proceed with the renovations, relying on plaintiff's earlier oral consent and insisting in any event that the alteration clause did not apply to the planned renovations, which were cosmetic rather than structural. No response to this letter arrived, and renovations began in early November of 1985.

The renovations included installation of new wall-to-wall carpeting, track lighting, clothing racks, wall paneling, and sheetrock on the ceiling. A third dressing room was added and a closed-in door and window to the back room were opened. Plaintiff visited the premises during the renovations.

On January 22, 1986, plaintiff's attorney wrote to defendant's attorney stating that the renovations were in violation of the lease. The letter offered to renegotiate the lease to reflect increased rent. The letter threatened litigation but did not invoke Article XXVIII of the lease and did not give the defendant thirty days to cure the breach. On March 12, 1986, however, plaintiff's attorney again wrote, advising defendant that she

was in default of Article VIII and that she had thirty days to cure the default, by returning the premises to the original condition.

Throughout the entire period of the dispute, defendant continued to pay rent due and plaintiff continued to accept it.

The trial court concluded that defendant's alterations were sufficiently material to trigger Article VIII's written consent requirement, that the oral discussions in early 1985 did not modify the lease agreement or extinguish plaintiff's right to enforce Article VIII, and, therefore, that defendant was in breach of the agreement. The court held, however, that plaintiff waived her right to exercise a forfeiture by failing to take prompt action. The court found that only in the March, 1986 letter did plaintiff give unambiguous notice of her intent to terminate the lease.

Plaintiff's first claim on appeal is that the trial court could not find a waiver on the facts it found because she promptly fulfilled her obligation under the lease to notify defendant of the breach and the insistence on her rights with respect to the breach. Under plaintiff's version of the facts, defendant was notified of the breach orally in November of 1985 and in writing by the January letter.

Plaintiff's position confuses notice of breach with notice of termination. In *Houghton v. Cook*, 91 Vt. 197, 204, 100 A. 115, 119 (1917), this Court held that breach of a lease provision does not terminate a lease provision by itself, and went on to hold:

> Such a breach is the ground of a forfeiture, but the forfeiture arises from the lessor's act. It is optional with him to claim a forfeiture or to waive it, and if he would treat the breach as a forfeiture he must promptly evince his purpose by some distinct and positive act.

In a series of decisions under the heading of *Hinsman v. Marble Savings Bank*, the Court reiterated and expanded on the *Houghton* holding. In *Hinsman v. Marble Savings Bank*, 100 Vt. 48, 50, 134 A. 635, 636 (1926), the Court noted that forfeitures "are not favored by the law." In *Hinsman v. Marble Savings Bank*, 104 Vt. 40, 42, 156 A. 874, 875 (1931), the Court added that termination must be by "some act unequivocally

manifesting the lessor's intention to claim the forfeiture and his election to terminate the lease." Consistent with our law's differentiation between a tenant's breach or default and the landlord's termination, Article XXVIII contains an authorization to terminate ("Lessor may terminate") rather than an automatic termination where the tenant breached a provision of the lease. In the words of *Houghton,* it was still up to the plaintiff to do some "distinct and positive act" to terminate the lease.

The trial court concluded that plaintiff did not act to terminate the lease until March, 1986 at the earliest and that such action was not "prompt." These conclusions are well supported by the findings. The January letter did not clearly state the plaintiff's election to terminate. It was actually an attempt to renegotiate the lease to obtain a higher rent. The trial court properly concluded that plaintiff was using defendant's breach "as a lever to extort more rent" and was not manifesting any intent to terminate the lease. Further, the court's conclusion that the eventual termination was not "prompt" is fully supported. Plaintiff continued to accept rent and treat the landlord-tenant relationship as intact for over four months.

Plaintiff also contends that our law on waiver is contrary to public policy and should be abandoned because it discourages the landlord from trying to settle disputes without litigation. We question whether the record supports plaintiff's characterization of her actions as attempting settlement of the dispute with defendant. In any event, our law on waiver is based on the sound equitable principle of avoiding forfeitures where possible. See *Hinsman v. Marble Savings Bank,* 100 Vt. at 50, 134 A. at 636. We see no reason to deviate from that principle.

Plaintiff's final argument is that the trial court's findings are insufficient to support its conclusion that she waived her right to terminate the lease. In large part, this argument is another attempt to get around the waiver standards of *Houghton* and *Hinsman* in favor of a new standard that reduces her burden or imposes a burden on defendant. Unlike *Lynda Lee Fashions, Inc. v. Sharp Offset Printing, Inc.,* 134 Vt. 167, 170, 352 A.2d 676, 677 (1976), the case relied upon by

plaintiff, the trial court here made all the findings required for the conclusion it reached.

*Affirmed.*