James v. Dunster, No. 414-5-08 Rdcv (Cohen, J., Mar. 3, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT
## RUTLAND COUNTY

| | | |
|---|---|---|
| | ) | |
| **LAVERN JAMES and ELLA JAMES,** | ) | **Rutland Superior Court** |
| | ) | **Docket No. 414-5-08 Rdcv** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NELSON DUNSTER and** | ) | |
| **KIMBERLY DUNSTER,** | ) | |
| | ) | |
| **Defendants** | ) | |

## DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

This case involves an action by Lavern and Ella James to quiet title for property on which Nelson and Kimberly Dunster hold a lease. The lease was originally entered into by both parties' predecessors in title in 1940. Plaintiffs argue that the lease is terminated for lack of payment of property taxes. Plaintiffs are represented by Rodney E. McPhee, Esq. and Michelle A. Kenny, Esq. Defendants are represented by Pietro J. Lynn, Esq.

### Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). In response to an appropriate motion, judgment must be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, ... show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). In determining whether a genuine issue of material fact exists, the court accepts as true allegations made in opposition to the motion

for summary judgment, provided they are supported by evidentiary material. *Robertson v. Mylan Labs*, *Inc.,* 2004 VT 15, ¶ 15, 176 Vt. 356. The nonmoving party then receives the benefit of all reasonable doubts and inferences arising from those facts. *Woolaver v. State*, 2003 VT 71, ¶ 2, 175 Vt. 397. Furthermore, where, as here, "the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. The burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact." *Ross v. Times Mirror, Inc.,* 164 Vt. 13, 18 (1995) (internal citations omitted).

## BACKGROUND

Lavern and Ella James own real property located at [address redacted] in the Town of Pawlet, Vermont (the "Property"). In 1940, their predecessor in title, Charles White, individually and as executor of the Cathcart Estate, entered into a 99-year lease of the Property to David Owens, Jr. for consideration of $750. The lease provides for an extension of 99 years upon the payment of $25.

The lease states:

> It is specifically understood by the parties hereto that this instrument differs from the ordinary quarry lease where the only rent that is paid is royalty and the lands are leased for a specific purpose, viz; quarrying. The parties hereto mutually agree that the party of the second part shall have complete and full control over the demised premises without any reservation or exception to the party of the first part, except as hereinafter mentioned.

The lease then provides that the lessee "shall pay all taxes assessed against the premises herein demised during said term or renewal thereof." The lessee can also sublet the premises without permission of the lessor. And, if the lessee chooses to quarry slate

2

on the land, the lessee must pay royalties to the lessor at the prevailing rate of other leases on the Cathcart property. The lease does not contain any provisions governing termination.

In 1950, David Owens, Jr. assigned the lease to John Somich, Peter Somich, Stephen Somich, Alex Somich and Nicholas Somich. The Somiches owned land adjacent to the Property.

At some time in or about 1989, Alfred and Wilma Rice acquired the Property. In 1991, the Rices received a payment of $144.28 for property taxes from Stephen Somich. In October 1991, the Rices sent a letter to Stephen Somich, stating:

> This is to inform you that Mr. & Mrs. Rice have owned the property since 1989 and were somewhat surprised to receive a tax payment from you for the year 1991/92. It is our feeling that if the Lease is at all valid, then tax payments should also be forthcoming for the tax years of 1989/90 and 1990/91.
>
> In her discussions with Robert Cathcart, Mrs. Rice is satisfied with the amount of your payment, but, again, feels that payments for the prior years should be made. If payments are not forthcoming, Mrs. Rice will return your current payment, and we will consider the Lease to invalid due to such default.

In 1998, Wilma Rice conveyed the Property by warranty deed to Peter Koopman. Wilma Rice crossed out the following provision in the deed: "EXCEPT a quarry lease recorded in Book 25, Pages 239-41 of the Pawlet Land Records, which lease was assigned by instrument recorded in Book 29, Pages 452-3 [sic] of the Pawlet Land Records."

Peter Koopman owned the Property from 1998 to 2003. During that time he never received any payments for property taxes, nor did anyone attempt to mine the Property for slate.

In August 2003, Peter Koopman conveyed the Property by warranty deed to Lavern and Ella James. The deed contains no description of the lease.

In April 2004, the Somiches conveyed their land (adjacent to the Property) to Nelson and Kimberly Dunster. The deed contains a provision assigning by quit-claim the lease of the Property.

In August 2004, an unidentified person appeared at the Property to inform the Jameses that the Dunsters had mineral rights to the Property. This person attempted to pay the Jameses $463.10 in cash for the Dunsters' portion of the real estate taxes. The Dunsters later attempted to mine the Property, sparking the instant suit.

## DISCUSSION

Vermont law on waiver is based on the sound equitable principle of avoiding forfeitures where possible, as they "are not favored by the law." *Zurmuhlen v. Uchida*, 153 Vt. 165, 168-69 (1989) (quoting *Hinsman v. Marble Savings Bank*, 100 Vt. 48, 50 (1926)). The Vermont Supreme Court has held that breach of a lease provision does not terminate a lease provision by itself:

> Such a breach is the ground of a forfeiture, but the forfeiture arises from the lessor's act. It is optional with him to claim a forfeiture or to waive it, and if he would treat the breach as a forfeiture he must promptly evince his purpose by some distinct and positive act.

*Houghton v. Cook*, 91 Vt. 197, 204 (1917). The Court has added that termination of a lease must be by "some act unequivocally manifesting the lessor's intention to claim the

forfeiture and his election to terminate the lease." *Hinsman v. Marble Savings Bank*, 104 Vt. 40, 42 (1931). The *Houghton* Court specifically held that "before the lessor can enforce a forfeiture for the breach of the covenant to pay taxes he must make a demand on the tenant to pay them." 91 Vt. at 204.

Thus, the law differentiates between a tenant's breach or default and the landlord's termination. *Zurmuhlen*, 153 Vt. at 169. Here, there was no automatic termination provision in the lease. See *Id.* (lease contained authorization for lessor to terminate, but not automatic termination where the tenant breached a provision of the lease). Therefore, in the words of *Houghton*, it was still up to the plaintiffs or previous landlords to do some "distinct and positive act" to terminate the lease.

In support of their motion, Plaintiffs have submitted the affidavit of Peter Koopman. Even taking as true all information in Mr. Koopman's affidavit—that he paid property taxes each year on the property each year he owned it—this does not evidence a "distinct and positive act" to terminate the lease.

On the other hand, Ms. Rice's letter in 1991 to the prior leaseholders may evidence a "distinct and positive act" to claim the forfeiture, as she specifically informed the Somiches that she would consider the lease terminated if they did not pay the prior taxes. It is undisputed that she later crossed the lease out of the deed upon conveyance to Mr. Koopman. However, this is the only evidence that the Somiches may not have paid the prior taxes.

While Ms. Rice's act of crossing out the lease may imply that the prior lessee did not pay the 1989 and 1990 taxes, the Court cannot, at this time, conclude that there is no genuine issue of material fact as to waiver of forfeiture. See *Woolaver*, 2003 VT 71, ¶ 2

5

(the nonmoving party receives the benefit of all reasonable doubts and inferences arising from the facts). Thus, there are genuine issues of material fact and neither party is entitled to judgment as a matter of law.

**ORDER**

Defendants' Motion for Summary Judgment, filed September 25, 2009, is DENIED.

Plaintiffs' Cross-Motion for Partial Summary Judgment, filed October 22, 2009, is DENIED.

Dated at Rutland, Vermont this _____ day of _____, 2010.

_____
Hon. William Cohen
Superior Court Judge

6