## Leonard J. Abbadessa v. Andrew Tegu Et Als

[140 A2d 1]

January Term, 1958.

Opinion Filed March 5, 1958.

*Arthur L. Graves* and *Witters, Longmoore & Akley for* the defendants.

*Richardson & Caldbeck* for the plaintiff.

**Hulburd, J.** The plaintiff is seeking to recover rent alleged to be due him under a lease signed by the defendants as tenants. Under a writ dated August 15, 1956, he commenced an action of contract for this purpose. The case was heard by the court and the substance of its unchallenged findings follows. In September 1951 the plaintiff, who was the owner of the Bradford Theatre premises, so-called, entered into a lease agreement with the defendants, whereby these premises, together with certain personal property contained therein, were leased to the defendants for a term of ten years from the 30th day of September, 1951. The defendants agreed to pay as rent the sum of $400.00 monthly, payable in advance. This they did through the month of December 1955, and then, having first sought to get the plaintiff to reduce the amount of the rent, without success, by a letter dated Jan. 12, 1956, they notified the plaintiff they were obliged "to cancel" the lease. On the same or following day the defendant, Peter Tegu, turned over to the plaintiff the keys to the theatre and it was not used by the defendants thereafter. Since then the premises have been available at all times to the defendants. The plaintiff has placed the property in the hands of a real estate agent to sell

but this was subject to the defendants' lease. At no time has the plaintiff exercised supervision of the property except such as a reasonable, prudent person in the same circumstances would have exercised.

In general it is the defendants' contention that there was a surrender of the premises by the defendants which the plaintiff accepted and that thereby the defendants' liability for rent was terminated. The first group of exceptions which the defendants have briefed are addressed to this point. The defendants urge that it was the trial court's duty to sift the evidence and make a finding on this question one way or the other. Assuming that this is so, the defendant could not have been harmed by the court's failure to make subordinate findings on this phase of the case unless the evidence was such that they would support an ultimate finding in the defendants' favor of a surrender and acceptance of the lease.

The plaintiff takes the position that an examination of the evidence bearing on this question will disclose that such a finding would not have been justified under our law. It becomes a question, then, of turning to the evidence to see just what the trial court had before it.

■■ In advance of that however, we must first have in mind what we are looking for in the evidence. Our law on this subject is stated in *McSweeney* v. *Dorn*, 104 Vt. 110, 158 A 88. It may well be summarized by two quotations from the opinion in that case. Thus at page 113 the court says: "A surrender of the possession is not necessarily a surrender of the term. In the law of landlord and tenant, the word "surrender" involves something more than the action of the tenant, alone. It has a contractual significance. As it takes two to make the bargain, it takes two to dissolve it in this way. There must be what amounts to a mutual agreement to put an end to the relation of landlord and tenant. Such an agreement may be express or implied. 2 Thomp. Real Prop. §1460. But, in the case of the residue of an existing term, no acts by the parties will amount in law to a surrender, unless the landlord's assent thereto is clearly inferable therefrom." And later in the opinion at page 114 the following paragraphs are to be found:

"When the defendant made the last payment of rent, he returned the key of the apartment to one of the plaintiffs, who thereafterwards by a placard in the window and an advertisement in a newspaper attempted to rent it to other parties. While these acts are admissible on the question of acceptance, and in some measure indicate an acceptance of the term, none of them nor all together, amount, without more, to an acceptance in law, nor do they necessarily discharge the tenant from his covenant to pay rent. *Spikings* v. *Fox*, 145 Ill App 337, 340; *Feust* v. *Craig*, Sup., 107 NYS 637, 640; *Newton* v. *Speare Laundering Co.*, 19 RI 546, 37 A 11, 12; *Breuckmann* v. *Twibill*, 89 Pa 58; *Conover* v. *Sterling Stores Co.*, 14 Del Ch 26, 120 A 740, 743; *Banks* v. *Berliner*, 95 NJL 267, 113 A 321, 323. 'Too much importance,' said Judge Jones, 'should not be attached to a delivery of the keys to the landlord and his attempt to relet the premises.' Jones, L. & T., 549. The legal significance of such acts depends upon the *quo animo* of the landlord. So the burden was on this defendant to show that these plaintiffs intended to accept. This intent must be established by some unequivocal act or acts. Those above recited are not such. *Owens* v. *Ramsey*, 213 Ky 279, 280 SW 1112, 52 ALR 149, 153; *Rogers* v. *Dockstader*, 90 Kan 189, 133 P 717, 4 ALR 663, 665; *Weinsklar Realty Co.* v. *Dooley*, 200 Wis 412, 228 NW 515, 517, 67 ALR 875; Taylor, L. & T. 549.

"That the defendant failed in his proof on the question of acceptance is well shown by the recent case of *Roberts* v. *Wish*, 265 Mass 179, 163 NE 892. That was a suit for rent accruing after the tenant abandoned the premises; and the contention was made that the question whether or not there was a surrender and acceptance was one of fact for the jury. The owner had assumed control of the property and had unsuccessfully attempted to rerent it. It was held that these acts, being consistent with the owner's right to protect the property and to minimize his loss, were not sufficient to show an acceptance of the term, and that a verdict for the plaintiff was properly directed."

No express agreement of surrender is claimed in this case, so the question is whether by some unequivocal act or acts the landlord has indicated an intention to accept a surrender. The

defendants point to the testimony of witnesses Rose and Hill in which it appeared that the plaintiff talked with them about leasing the theatre following receipt of a letter from the defendants saying they were "cancelling" the lease. As a part of the conversation, however, prospects Rose and Hill both agreed that "there was something said about getting the balance (of the rent) from the Tegus." Thus the plaintiff's action in attempting to lease, loses all significance as an act evidencing an intent to accept a surrender of the lease, since the intent which underlay it is manifest in the negotiations themselves. Far from disclosing an intent to accept a surrender from the Tegus, they indicate the very opposite: a determination to hold the Tegus to their obligation under the lease. Even Hill and Rose got the impression that the Tegus were to be consulted and that any offer made them (Hill and Rose) could have been "subject to working out a deal with Mr. Tegu."

In connection with this evidence, the defendants call our attention to certain testimony of the plaintiff given in cross examination. It went as follows:

"Q. Was there any occasion when they (Rose and Hill) came to see you about renting the theatre for three or four days?

A. Yes.

Q. About when did they come to see you the first time?

A. About the same time.

Q. What month was that?

A. Early September or late August.

* *

Q. Were you then ready to rent the Bradford Theatre to Rose and Hill for the account or the benefit of Peter and Andrew Tegu?

* *

A. No.

Commenting on this testimony the defendants observe: "If the plaintiff was not attempting to lease the premises for the

benefit of the defendants, he must have been doing so 'solely for his own benefit' ." Obviously this is not a fair inference. Because he was not ready to lease for the account or benefit of the Tegus, does not mean that the plaintiff was necessarily ready to lease for his own account or benefit. It may be that he was ready to lease only if he thought it would be to the benefit of both himself and the Tegus. It may be that he simply wasn't ready to lease; that what he did was exploratory to see what he could do. Conditions, too, might change and the Tegus change their minds with them. The answer at best gives rise to a number of possibilities. Its effect was equivocal. It did not demonstrate the plaintiff's intent, as required by our cases, but left it to conjecture at best. It supplied nothing toward the proof of an acceptance of a surrender. The defendants virtually admit that this is so but say if we would follow the holding of *Richards Co.* v. *Libby*, 136 Me 376, 10 A2d 609, 126 ALR 1215, we would avoid a result which gives the landlord an undue advantage,—that of attempting to relet while holding the tenant for the full rent for the balance of the term.

We know of no reason why a tenant is entitled to more relief from his obligations than any other person who enters into a contractual obligation. It seems to us that to hold as the defendants have suggested would tend to deter a landlord from taking any action toward re-letting the property. This would be unfortunate and would make for having it stand idle, an economic result which should not be encouraged. We hold to the rule announced in *McSweeney* v. *Dorn*, *supra*, and the defendant's exceptions bearing on the court's failure to find an acceptance of a surrender are not sustained.

In addition to the foregoing group of exceptions the defendant excepted to finding No. 11 which reads as follows:

"11. There is due and payable to the plaintiff from the defendants the rent under the agreement for said premises from January 1st, 1956 up to and including December, 1956, the last full month before the date of the hearing, which said rent by the terms of the lease amounts to $4,800.00."

It is at once apparent from this finding that the trial court, in its computation, went beyond the time when suit was

brought and included everything up to the date of hearing. This the defendants say is erroneous as a matter of law.

There is no question but that the court in making this finding, and basing its judgment thereon, exceeded the ad damnum of the writ, the amount sought in the plaintiff's specifications, and the amount sought in the plaintiff's requests to find. The latter document, filed after hearing and before findings were filed, sought to have the court find there was due the plaintiff $400 monthly as rent from January 1, 1956 to August 1, 1956 inclusive, "in the sum of Three Thousand Two Hundred Dollars ($3,200.00) with interest on each item of Four Hundred Dollars contained therein from the due date of each item." Thus the action of the court was not only outside the issues of the case; it was beyond the understanding of the parties themselves. In so doing the trial court acted contrary to the holding of *Stanley* v. *Turner*, 68 Vt 315, 35 A 321.

In the course of the trial in this case the court stated: "I can see no damage to any of the parties to raise this *ad damnum* and if the court felt there was a law and there was such recovery that the court could make such an order." For this tentative suggestion of the court, the defendants voiced no approval, nor was the course of the trial such as to indicate that the court was proceeding on that basis. The plaintiff's request for finding showed that he assumed that there could be liability only for the eight months' rent which had accrued prior to the commencement of suit. On no theory can the trial court's action be sustained, and finding No. 11 can not stand nor can the judgment, as rendered, since it is predicated on it. It is ascertainable, however, by simple computation that prior to commencement of suit, eight full months of rent had accrued, which at $400.00 a month would amount to $3,200. This amount the plaintiff would be entitled to recover. Under circumstances such as these we have the authority to modify the judgment order here in such manner as to obviate the defendants' objection. *Patch* v. *Lathrop*, 116 Vt 151, 153, 70 A2d 605.

The defendants urge that this authority should not be exercised for the reason that it has learned that the plaintiff

sold, in July 1957, most, if not all, of the fixtures which were in the building rented by him; that this action on the plaintiff's part, constitutes, as a matter of law an acceptance of the surrender of the lease and bars further action on account of the same. Whatever may be the effect of the claimed sale on rent accruing thereafter, it clearly was not material to the period from January 1, 1956 to August 1, 1956 for which the recovery of rent is being sought in this action. Such evidence would not be available to the defendants so they could not make a better case on retrial. Cf. *Peters* v. *Paro Estate.*, 96 Vt 95, 109, 117 A 244, 25 ALR 615; *Riggie* v. *Grand Trunk Ry. Co.*, 93 Vt 282, 287, 107 A 126. Accordingly, we hold that the judgment for $4,200 should be modified and reduced to the sum of $3,200 so as to permit recovery only of the rent which had accrued prior to the time of the commencement of suit.

*Judgment reversed, and judgment for the plaintiff in the sum of $3,200, with interest on each $400 item of rent from the eight successive due dates of such items, commencing January 1, 1956, to the date of judgment order herein, together with the plaintiff's costs below, less defendant's costs in this Court.*