### State of Vermont v. Glens Falls Insurance Company and James R. Paya

[365 A.2d 243]

No. 269-75

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed September 17, 1976

444

*M. Jerome Diamond,* Attorney General, and *Charles D. Hassell,* Assistant Attorney General, Montpelier, for Plaintiff.

*John T. Sartore* of *Paul, Frank & Collins,* Burlington, for Glens Falls Insurance Co.

**Larrow, J.** Injured in a snowmobile accident at the Little River State Park in Waterbury on January 16, 1972, James R. Paya brought suit against the Commissioner of Forests and

Parks in Chittenden Superior Court in March, 1973, seeking damages for his injuries and alleging negligence on the part of the State. Having previously, on December 11, 1972, entered into a non-waiver agreement with its insurer, Glens Falls Insurance Company, the State after suit by Paya brought this declaratory judgment action against Glens Falls and Paya, seeking a judgment that Glens Falls was obligated to defend the State and the Commissioner under its policy. It sought and obtained a temporary injunction against Paya's suit. Glens Falls pleaded a failure by the State to give notice of the occurrence "as soon as practicable", as required by the terms of the policy. The trial court, after hearing, found the facts involved, ruled with Glens Falls and dismissed the complaint, holding that Glens Falls was under no obligation to defend or to indemnify the State or the Commissioner. The State appeals from this judgment.

There is no substantial dispute about the facts relevant to the issues involved. The policy of insurance in force with respect to the occurrence in question contained a notice provision as follows:

> 4(a). In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable.

Robert DeForge was Parks Operations Supervisor for the State; Thomas Hennebury was Manager of the Little River State Park where the accident occurred on January 16, 1972. Neither had any personal knowledge of its occurrence, but the next day DeForge read an article in the Burlington Free Press about the accident, which described Paya as a "severely injured snowmobiler" admitted to the hospital who had "struck a partially hidden steel gate near the entrance to the Little River snowmobile trail." That same day a local radio station carried a similar account, which was heard by both DeForge and Hennebury. DeForge contacted Hennebury and learned that Hennebury had no information about the accident. He

ordered him and one Erwin Lindner, Assistant Parks Operations Supervisor, to undertake an investigation.

Lindner and Hennebury thereupon went to the Park on January 18, 1972, and conducted a thorough inspection. They searched the area around the gate, the only likely scene for the accident, for debris, blood, refuse or the like. They found none. The gate however was closed, but unlocked, and had been sprung; there were small scratches on the gate post itself. No report of the accident had been made to Hennebury, by whose house snowmobilers had to pass to reach the parking area.

Following the investigation, Hennebury sent a letter and Park Security Check report form to DeForge, who read them and put them in a file. Lindner also submitted to DeForge a four page report with three photos and three diagrams. DeForge read and filed these, as well. No notice of the occurrence was given Glens Falls until November 22, 1972, one day after a notice of claim was received from Paya's attorney. The Commissioner then wrote Glens Falls. Subsequently a non-waiver agreement was executed, coverage denied, suit was brought by Paya and the complaint forwarded to Glens Falls. This action followed.

■ The trial court concluded, from the foregoing, that the State had failed to show by the required burden of proof that it notified its insurer, Glens Falls, as soon as practicable, as required by the policy provision. It further found that the accident was not trivial, and that the circumstances were such that a reasonable and prudent person had reason to believe that a claim for damages might arise, citing *United States Fidelity and Guaranty Co.* v. *Giroux*, 129 Vt. 155, 159, 274 A.2d 487 (1971) and *Dumont* v. *Knapp*, 131 Vt. 342, 346, 306 A.2d 105 (1973). We agree that the findings support this conclusion, and accordingly affirm.

■ Two facts apparent from the exhibits, incorporated in the findings, although not set forth verbatim in the findings themselves, lend strong credence to the conclusion that there was good reason to believe a claim for damages might arise. The newspaper clipping referred to set out a statement by Paya's wife that "the gate was not there three weeks ago and

it was a hazard on the snowmobile trail." And the accident report from Lindner to DeForge had a concluding paragraph as follows:

> Note: This gate was closed by a person or persons against regulations. If this closing had to be done, permission should have been asked for and I'm sure it would not of (sic) been given because of the location of this gate. All personnel in charge of these areas are given instructions to the effect that all gates, chains, cables or other obstructions which might endanger persons riding skimobiles be opened or removed during the time snow is on the ground.

To any reasonable person, these statements would certainly give rise to a belief that there might well be a claim for damages. As we have repeatedly pointed out, this is the true test of the duty to give notice, not the presence or absence of a belief by the insured as to liability or non-liability. *United States Fidelity and Guaranty Co.* v. *Giroux, supra; Dumont* v. *Knapp, supra.* The duty of the insurer extends to the defense of suits, however groundless; to fulfill that duty it requires and is entitled to receive the earliest practicable notice that it may be required to undertake its duties under the policy. That duty arises when circumstances give notice of the possibility of impending claim.

The State argues, speciously we think, that the presence or absence of the duty to report must be judged in light of circumstances existing at the time of the occurrence, and cannot be weighed in light of subsequent events. It cites to this effect language from the opinions above cited. In *Giroux* the trial court found that the insured had acted reasonably, had no reason to suspect suit or claim prior to service upon him, and that the first "subsequent event" was such service. In *Dumont* the trial court found no reason to suspect a claim would arise where the insured had no reason to believe claimant was hurt on his premises, did not assert any injury on confrontation, and had only late, hearsay information that claimant was contemplating suit. Taken from context, the cited language may lend some support to the State's argument, but we do not consider that we have held as contended. The duty to notify

arises with the advent of circumstances calculated to instill in the reasonable person belief in the possibility of an impending claim. Reduced to its illogical conclusion, the State's contention would eliminate forever the need for any notice to the insurer, if the prospect of a claim was not apparent at the very time of the occurrence. Even a subsequent notice of claim would not, under this view, trigger the duty. We cannot subscribe to such an interpretation. Supervening circumstances cannot, it is true, give rise *retroactively* to a duty to notify; the duty does not arise until circumstances exist which would be a *caveat* to a reasonable person. But when such circumstances arise, the duty to notify arises with them.

■ The State asserts as error the failure of the trial court to find that DeForge, acting for the State, had a reasonable belief that there was no liability to Paya. This belief, it says, was a reasonable one because it was based on a disclaimer of liability in a pamphlet put out by the State. Apart from the fact that our rule, as outlined, rests upon what the belief of a reasonable person should be, rather than an individual belief, and apart from the bootstrap nature of the argument advanced, the hard fact is that a claim was indeed to be expected, from the published reports and the significant quoted language of Lindner's report to DeForge. No error results from want of a material finding which is not supported by the evidence. *Abbadessa* v. *Tegu*, 120 Vt. 352, 140 A.2d 1 (1958).

Both parties argue at length the rule laid down in *Dunn* v. *Travelers Indemnity Co.*, 123 F.2d 710 (5th Cir. 1941) and its progeny. *Dunn* is indeed a leading case, cited for the general proposition that a reasonable belief of non-liability may excuse an insured's delay in giving notice to his insurer. 2 R. Long, Law of Liability Insurance § 13.12. We will not review this line of cases at length. Fairly put, it presupposes a more than cursory investigation, discussion with the claimant, interviewing witnesses, and according to some cases consultation with counsel. No such course of action is presented by the evidence in this case. The claimant was never interviewed. The office of the attorney-general, which we judicially recognize as the state's largest law office, was never even contacted. The unauthorized closing of the gate in question was ignored.

As DeForge testified, he simply filed the investigative report because of a general state policy, since abandoned, of not notifying the insurer unless and until a formal claim was filed. We do not consider that either the unilateral issuance of a general disclaimer or compliance with self-imposed bureaucratic "standard operating procedure" can excuse the State from its contract duty to report promptly an occurrence which the trial court found, most tenably, would impel a reasonable person to believe a claim might result.

We do not perceive that our holdings in either *Giroux* or *Dumont* require any other conclusion. The "reasonable belief" of the insured in each of these cases was not a belief on the legal issue of liability *vel non,* but a belief of factual noninvolvement in the occurrence in question. *Giroux* involved "a reasonable belief . . . that the occurrence did not involve him or the plaintiff." *Giroux, supra,* 129 Vt. at 161. *Dumont* was based on lack of knowledge, or reason to know, that claimant was injured on the insured's premises. *Dumont, supra,* 131 Vt. at 345.

We emphasize again that we do not, and cannot, lay down an unbending rule to cover every foreseeable set of circumstances. Whether a notice is given "as soon as practicable" much resembles the test for negligence, involving as it does the implications which known facts would convey to a reasonable person. We cannot say that there will never be cases in which the conclusions of the trial court are unsupportable as a matter of law. But this is not such a case. The State cannot justify the "dead trail" it presented to its insurer by saying that it decided, without benefit of counsel or contact with the claimant, that no claim would ever be made. The reports it had should have been filed with the insurer, and not in its own closed file.

Not subject matter of this appeal, and unlikely to arise in future appeals because of our stringent limitations on appeals of interlocutory orders [V.R.A.P. 5(b)], is the action of the trial court in granting to the insured, State of Vermont, a temporary injunction prohibiting Paya from prosecuting his personal injury action in Chittenden Superior Court during the pendency of this declaratory judgment action. Because of the relative frequency of litigation involving

coverage under a particular policy and the frequency with which injunctive relief against pending or threatened litigation is sought, we comment on this aspect of the case to prevent recurrence of judicial action which can effectively prejudice the important right of a tort claimant to bring his suit and have it decided.

Because of the often drastic effects of the temporary injunction, the power to issue it must be used sparingly, and only upon a showing of irreparable damage during the pendency of the action; it must also appear that the injunction is required to preserve status quo pendente lite. *Central Vermont Ry.* v. *United States,* 231 F.Supp. 967 (D. Vt. 1964). No such impelling reasons were present when this action was brought. The State of Vermont, even without the existing nonwaiver agreement, could have defended the Paya action and litigated the question of coverage later, with full recovery of all its costs, expenses, and any adverse judgment. *Lord & Taylor, Inc.* v. *Yale & Towne Mfg. Co.,* 230 N.Y. 132, 129 N.E. 346 (1920); *Utilities Constr. Corp.* v. *Peerless Ins. Co.,* 233 F.Supp. 64 (D. Vt. 1964). Trial of the Paya action could damage the State only from a monetary standpoint; with full recovery of these from its insurer, it would be made whole. And, while we have held the powerful remedy of enjoining a claimant's action at law to prevent irreparable damage available to an insurer in cases where the insured will not assent to a nonwaiver agreement [*Farm Bureau Ins. Co.* v. *Houle,* 118 Vt. 154, 102 A.2d 326 (1953)], the drastic choice between defense and taking its chance on the effectiveness of the insured's defense is eliminated where a non-waiver agreement has been entered into, as here. A fortiori, no irreparable damage can result to the insured, here the State, when such a nonwaiver agreement exists. No temporary injunction should have issued in the instant case.

But, as we have pointed out *supra,* this question is not the subject of this appeal, and is referred to only for future judicial guidance in situations not lending themselves to the prospect of appellate review. For the reasons expressed in discussing the issue of coverage, affirmance is required. The trial court, on the merits, reached an appropriate result consistent with the authorities upon which it relied.

*Judgment affirmed.*