## John Deschenes v. Robert Congel

[547 A.2d 1344]

No. 86-186

Present: **Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed April 29, 1988

580

*Donald E. O'Brien*, Burlington, for Plaintiff-Appellant.

*Fred I. Parker* and *Thomas Z. Carlson* of *Langrock Sperry Parker & Wool*, Burlington, for Defendant-Appellee.

**Peck, J.** This is an appeal by plaintiff from a judgment and order of the Chittenden Superior Court concluding that defendant effectively terminated his lease on June 10, 1982, and awarding plaintiff damages of $8,375.76. Plaintiff argues that the court improperly concluded that defendant terminated the lease, and that he should be awarded damages of $77,410.84. We reverse and remand.

This case was submitted to the superior court on an agreed statement of facts. On February 10, 1980, plaintiff and defendant entered into a written lease and option to purchase agreement by which plaintiff leased to defendant certain unimproved land located in Williston, Vermont. The agreement provided that the land would be leased to defendant for a term of sixty (60) months commencing February 10, 1980, and terminating February 9, 1985. Defendant was required to pay two thousand dollars ($2,000) a month rent, in advance, plus all real estate taxes assessed against the leased land. The agreement also granted an option to defendant to purchase the leased land for four hundred thousand dollars which would continue during the term of the lease. In July of 1981, the parties executed a clarification of their agreement which, for tax purposes, stated that the monthly payment of two thousand dollars ($2,000) would be reallocated to be twelve hundred dollars ($1,200) a month for the lease and eight hundred dollars ($800) a month for the option to purchase.

Paragraph 7 of the lease and option to purchase sets out the manner in which the lease could be terminated. It provides as follows:

> The Lessee shall have the right to terminate this lease by giving written thirty (30) days notice to the Lessor and paying rent to the date of termination. Said termination of lease shall also terminate and extinguish the option to purchase provided above.

On March 4, 1982, defendant sent a letter which proposed the lease and option agreement be amended to substitute another parcel of land and to grant a drainage easement to defendant over other land owned by plaintiff. Plaintiff replied on March 12, 1982, declining to amend the agreement. By letter on March 16, 1982, defendant replied:

> I hereby notify you that Robert J. Congel will be terminating the lease for certain land leased from you in the Town of Williston, VT. Regretably, you have rejected our latest proposal which would have averted the necessity of terminating the lease.

> If, upon the receipt of this notice, you wish to reconsider your rejection of our proposal, Mr. Congel would still be willing to proceed with that proposal. . . .

Plaintiff responded to the March 16 letter on March 24, 1982, and then again on April 29, 1982. Both letters stated that the March 16 letter did not comply with the termination provision of the lease since "no termination date is stated nor is the rent paid to the stated date of termination." At this time only the January rent had been paid for the year, and rent was due for the months of February, March and April. Plaintiff also warned defendant that the rent would continue to accrue until the lease was properly terminated.

On May 10, 1982, defendant sent plaintiff a letter which stated that the March 16 letter was intended as a notice of termination, and that since the agreement required 30 days' notice, he calculated that rent was due to plaintiff only until April 16, 1982. He also pointed out that the clarification of the lease option agreement allocated twelve hundred dollars ($1,200) per month as rent,

so that the amount due for rent during the period between February 1 to April 16, 1982, was only three thousand dollars ($3,000).

Plaintiff again responded by letter. He wrote on May 21, 1982, that the rent of two thousand dollars ($2,000) a month was consideration for both the lease and the option; that the clarification was executed solely for tax purposes and did not change this; and that the option could not be terminated apart from the lease. Because the lease and option must be terminated together, plaintiff insisted that the monthly payment "cannot be reduced by allocation to the lease portion." Plaintiff further pointed out that defendant had subleased a portion of the land to a golf driving range which stays open until mid-September, and that the sublease was obviously inconsistent with the claimed March 16 notice of termination.

Plaintiff proposed a compromise of eight thousand dollars ($8,000) upon the conditions of payment of defendant's share of real estate taxes, proration of the rent money received from the golf driving range, assignment of the sublease, and the execution of a termination statement for recording so that the land would be unencumbered. On July 28, 1982, defendant rejected the compromise offer by sending a check for the rent owed up to April 16, 1982, calculated at the twelve hundred dollars ($1,200) a month rate, plus two checks for five hundred dollars ($500) representing partial payment from the sublease, and a check for the real estate taxes for the first sixteen (16) days of April. These items were returned to defendant by plaintiff.

On July 16, 1985, the Chittenden Superior Court issued its opinion and order which concluded that the May 10, 1982, letter made clear that the March 16, 1982, letter was intended to be a termination of the lease agreement, and that consequently the lease and option to purchase was extinguished on June 10, 1982. The court also held that the clarification agreement was made for tax purposes only and that the purchase option could not terminate any sooner than the lease so that the full two thousand dollars ($2,000) a month payment was owed as rent. The court then directed plaintiff's attorney to prepare an appropriate judgment order and submit it to the court after approval as to form by defendant.

On July 19, 1985, plaintiff filed a motion to amend judgment pursuant to V.R.C.P. 52, arguing that the lease had never been properly terminated because rent had not been paid to the date

of termination. Plaintiff also requested the court to state separately its conclusions of law, and requested additional findings as to the termination and amount of rent due. The trial court denied plaintiff's motion in its order dated January 21, 1986, and on May 14, 1986, the court ordered that defendant pay $8,375.76 in damages together with interest and costs.

Plaintiff argues that the trial court erred by concluding that the May 10, 1982, letter from defendant acted as a termination of the lease and option to purchase. He points out that the paragraph 7 termination provision provides that defendant's right to terminate is dependent upon two conditions: thirty days' written notice, and paying rent to the date of termination. The trial court, he contends, ignored the second condition, in effect, changing the contract between the parties to allow termination to be accomplished by notice alone.

In Vermont, when a lease expresses an agreement with regard to notice of termination, the time, mode and manner of such notice must conform to the agreement. *Archambault* v. *Casellini-Venable Corp.*, 115 Vt. 30, 32, 49 A.2d 557, 558 (1946); see also *Roy's Orthopedic, Inc.* v. *Lavigne*, 145 Vt. 324, 326, 487 A.2d 173, 175 (1985) (the law presumes that parties intended to be bound by the plain and express language of their agreement). In this case, defendant's notice of termination was ineffective because it did not conform to the termination procedure. The lease was unambiguous: the lessee was given a right to terminate the lease only "by giving written thirty (30) days notice to the Lessor and paying rent to the date of termination." Defendant only partially complied with this provision. Although he tendered a written notice of termination, he never paid, nor did he offer to pay, the full rent to the date of termination. In addition, defendant continued to exercise dominion over the leased premises after the date of termination, as he had subleased a part of the property.* We hold, therefore, that the trial court erred by concluding that the lease was effectively terminated as of June 10, 1982.

Defendant argues that plaintiff breached his duty to act in good faith by refusing to acknowledge his termination efforts. We disagree. The record indicates that plaintiff repeatedly acknowl-

---

* The sublease was never assigned to plaintiff, and the sublessee continued to use the property from 1982 through 1984. Although the sublessee paid no rent during the 1983 and 1984 seasons, the rental payments had previously been made by the sublessee directly to defendant.

edged defendant's right to terminate the lease, while informing defendant that he would only accept a termination notice that complied with the lease-option provision. Plaintiff, therefore, put defendant on notice that only his full compliance with the time, manner and method of termination, as set out in paragraph 7 of their agreement, would effectively terminate his obligations under the lease. If anything, the record suggests that it may have been defendant who breached an obligation to act in good faith by subleasing the premises and failing to pay *any* rent for the three months prior to the April date when he initially attempted to terminate the lease. See *Shaw* v. *E.I. DuPont*, 126 Vt. 206, 209, 226 A.2d 903, 906 (1966) ("implied covenant of good faith and fair dealing prevails in every contract.").

■ Defendant also argues that plaintiff did not satisfy his obligation to mitigate defendant's damages by failing to make a reasonable effort to release the property, following the breakdown of termination negotiations and defendant's breach of the lease by nonpayment of rent. However, even assuming arguendo an obligation on the part of the lessor to mitigate damages, that obligation does not apply here. The plaintiff could not retake possession without acceding to the terms demanded by defendant for a recordable termination agreement, which was conditioned on plaintiff's acceptance of less than the full amount owed and to which he was entitled. Additionally, the property had been subleased by defendant under an agreement obligating the sublessee to pay rent to defendant. "[T]he prime lease between plaintiff and defendant was never terminated; nor did plaintiff obtain possession of the demised premises. In such circumstances there was no way for plaintiff to mitigate damages." *Helmsley* v. *Anderson Clayton & Co.*, 60 A.D.2d 808, 808, 400 N.Y.S.2d 544, 545 (1978).

Defendant's efforts to terminate the agreement were ineffective because they did not conform to the time, mode and manner of termination provided for by the language of the agreement. *Archambault*, 115 Vt. at 32, 49 A.2d at 558. Consequently, defendant is liable for all rent and taxes due on the lease which expired on February 9, 1985. Accordingly, we reverse and remand for recalculation of these damages. See *Johnson* v. *Desmarais*, 94 Vt. 496, 500, 112 A. 199, 202 (1921); *Barlow* v. *Wainwright*, 22 Vt. 88, 94 (1849).

*Reversed and remanded.*