**Donohoe O'Brien, Burlington Square Limited Partnership, d/b/a Burlington Square v. William R. Black, Karen L. Black and Pickwick & Perkins, Ltd.**

[648 A.2d 1374]

No. 92-073

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 8, 1994

Motion for Reargument Denied August 10, 1994

*Dennis R. Pearson* and *Craig Weatherly* of *Gravel and Shea,* Burlington, for Plaintiffs-Appellants.

*Paul D. Jarvis* and *Richard R. Goldsborough* of *Jarvis & Kaplan,* Burlington, for Defendants-Appellees.

**Johnson, J.** Today, in affirming the judgment of the superior court, we hold that a commercial landlord has a duty to make reasonable efforts to mitigate its damages when its tenant abandons the leased property. This duty arises as soon as the landlord has notice of the tenant's abandonment, even if the lease has not been formally terminated.

Landlord, Burlington Square Mall, brought this action to recover rents and expenses under a lease after tenant, Pickwick & Perkins, Ltd., abandoned the leased premises before the scheduled expiration of the lease term. The lease provided that, in the event of default by tenant, "Landlord may, at its option, give to Tenant a written notice of its intention to terminate this lease." It further provided that "[a]cceptance of the surrender of this lease shall not be effective unless made in writing and signed by Landlord."

The five-year lease was to end on November 1, 1991, but tenant abandoned its space in the Burlington Square Mall and ceased paying

rent at the end of January 1990. Shortly thereafter, landlord began searching for a replacement tenant. Landlord also sent a notice of default, warning tenant that if tenant did not cure the default, landlord could exercise its option to terminate the lease. Although the tenant did not cure its default, landlord did not formally terminate the lease or otherwise seek to dispossess tenant from the premises until August 10, 1990, when it rented the space to a new tenant. Landlord then brought this action seeking to charge Pickwick & Perkins rent for the intervening months between abandonment and reletting.

Tenant defended the action by arguing that landlord's failure to make reasonable efforts to mitigate damages relieved tenant of any obligation to pay rent. The dispute over mitigation centers around landlord's response to a prospective tenant, Vivien Ginsberg, in February 1990. The trial court found that Ms. Ginsberg, another tenant in the Mall, had approached landlord about the possibility of expanding her business and relocating into the space vacated by tenant. Landlord refused to discuss the possibility of renting this space with Ms. Ginsberg, telling her that the space had already been relet to another tenant. This was not in fact the case. Ultimately, landlord was successful in leasing to a new tenant that was part of a national chain at a substantial increase in rent.

After a bench trial, the court entered judgment in favor of tenant. The court held that landlord had a duty to make reasonable efforts to mitigate its damages upon abandonment by tenant, even though the lease had not been formally terminated. The court then found that tenant had presented sufficient evidence to sustain its burden of proving that landlord failed to mitigate damages, reasoning that landlord's "blatant failure to even discuss with Ms. Ginsberg the possibility of renting the premises and [to] listen to her proposed terms was unreasonable." The court concluded that, having failed to mitigate its damages when it had the opportunity to do so and choosing instead to hold out for a higher paying tenant, landlord "cannot recover rent for the waiting period" from tenant.

Landlord makes two arguments on appeal: (1) that a commercial landlord does not have a duty to mitigate damages after the tenant abandons the leased premises but prior to the formal termination of the lease, and (2) assuming such a duty exists, the trial court's finding that landlord failed to mitigate its damages was clearly erroneous.

I.

Landlord first argues that, when a lessee abandons the leased premises, a commercial lessor does not have an affirmative duty to

mitigate damages until the lease is formally terminated. Absent formal termination, which is within its control, landlord argues it can allow its damages to accrue until the end of the lease period. This is a question of first impression in Vermont,[*] though many other jurisdictions have addressed this issue and are divided over it.

Those jurisdictions that follow the traditional rule that a landlord has no duty to mitigate damages upon a tenant's abandonment "proceed[] from the theory that a lease creates an estate in land and the lessee thus becomes the owner of the premises for the term of the lease. *Gruman [v. Investors Diversified Servs.*, 78 N.W.2d 377, 381 (Minn. 1956)]. Under this theory the lessor need not concern himself with the lessee's abandonment of the lessee's own property." *Mar-Son, Inc. v. Terwaho Enters., Inc.*, 259 N.W.2d 289, 291 (N.D. 1977) (discussing, but rejecting, traditional rule). Thus, under this view, upon the lessee's abandonment of the property, the lessor may elect either to: (1) accept the lessee's surrender of the premises, thus terminating the lease, or (2) decline to accept the surrender and continue to hold the lessee liable for rent as it becomes due. *Schneiker v. Gordon*, 732 P.2d 603, 607 (Colo. 1987); *Rokalor, Inc. v. Connecticut Eating Enters., Inc.*, 558 A.2d 265, 268 (Conn. Ct. App. 1989). Only if the lessor elects to terminate the lease is it obligated to mitigate its damages because then the action is one for breach of lease, in which case basic contract principles apply. *Rokalor*, 558 A.2d at 268.

The modern trend, however, is to recognize a landlord's duty to mitigate damages. "In recent years, almost all courts which have faced the question have refused to allow landlords to recover money from a defaulting tenant in damages when the landlord could have avoided those damages by leasing the premises to another with no greater risks to the landlord than he assumed under the original lease." 5 A. Corbin, Corbin on Contracts § 1039A (Supp. 1993). These courts reason that a modern lease is far more than a conveyance of an estate in land and treat a lease as both a conveyance and a contract. See, e.g., *Schneiker*, 732 P.2d at 610 ("We can perceive no reason why the covenant to pay rent should be treated differently than a covenant

---

[*] In *Deschenes v. Congel*, 149 Vt. 579, 547 A.2d 1344 (1988), this Court assumed arguendo the existence of a landlord's duty to mitigate upon a tenant's abandonment. In that case, however, the tenant prevented the landlord from retaking possession and reletting. We held that, in that circumstance, the landlord had no duty to mitigate. *Id.* at 584, 547 A.2d at 1347; accord *Sullivan v. Lochearn, Inc.*, 143 Vt. 150, 153, 464 A.2d 745, 746 (1983) (no duty to mitigate when breaching party hinders or prevents mitigation). *Deschenes* is inapposite to this case because the landlord here could have reentered the leased premises immediately.

to pay contained in any other contract."); *Bernstein v. Seglin*, 171 N.W.2d 247, 250 (Neb. 1969) ("It is difficult to find logical reasons sufficient to justify placing [commercial] leases in a category separate and distinct from other fields of the law which have forbidden a recovery for damages which the plaintiff by reasonable efforts could have avoided. The perpetuation of the distinction between such a lease and a contract, in the application of the principle of mitigation of damages, is no longer supportable."); *Wright v. Baumann*, 398 P.2d 119, 120, 121 (Or. 1965) (noting that a "modern business lease is predominantly an exchange of promises and only incidentally a sale of a part of the lessor's interest in land" and concluding that "[t]here is no reason why the principle of mitigation of damages should not be applied to it").

Under general contract law, "the nonbreaching party in a contract dispute has a duty to make reasonable efforts to mitigate damages arising from the breach." *Estate of Sawyer v. Crowell*, 151 Vt. 287, 294, 559 A.2d 687, 692 (1989). This duty to mitigate has alternately been referred to as the doctrine of "avoidable consequences," in recognition of the fact that an injured party should not be able to recover damages for loss that could have been avoided with reasonable effort. *Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 904 n.8 (Utah 1989); see also 3 E. Farnsworth, Farnsworth on Contracts § 12.12, at 220 (1990) (discussing preclusion of recovery for avoidable losses); Restatement (Second) of Contracts § 350 comment b (1981) (no recovery for reasonably avoidable losses).

■ We conclude that the principles underlying the duty-to-mitigate rule in general contract law sound with equal force in the landlord-tenant context. Under the traditional no-duty-to-mitigate rule espoused by landlord, when a tenant abandons the premises, a landlord can delay termination and "unreasonably sit idly by and allow damages to accumulate." J. Calamari & J. Perillo, The Law of Contracts § 14–15, at 610 (3d ed. 1987). We find that it would be palpably unreasonable to provide landlords with what, in essence, would be the power to decide when their duty to mitigate damages arises. Rather, the law should be such as to deter "a landlord from passively suffering preventable economic loss, to encourage the productive use of land, and to decrease the likelihood of physical damage to property." *Schneiker*, 732 P.2d at 611; see also *Abbadessa v. Tegu*, 120 Vt. 352, 357, 140 A.2d 1, 4 (1958) (idle property is economic result not to be encouraged).

■ Moreover, in the context of residential landlord-tenant law, this Court already has discarded the antiquated concepts that defined the landlord-tenant relationship solely in terms of property law and recognized "'that a lease is essentially a contract between the landlord and the tenant.'" *Hilder v. St. Peter*, 144 Vt. 150, 158–59, 478 A.2d 202, 208 (1984) (quoting *Boston Hous. Auth. v. Hemingway*, 293 N.E.2d 831, 842 (Mass. 1973)). In light of the foregoing considerations, we now expressly discard those same notions in the context of commercial landlord-tenant law and recognize that a commercial landlord has a duty to mitigate its damages when a tenant abandons the leased premises.

■ Our holding does not in any way undermine the rule of law that, prior to termination, a defaulting tenant still has enforceable rights and obligations. See *Zurmuhlen v. Uchida*, 153 Vt. 165, 168, 569 A.2d 480, 482 (1989) ("breach of a lease provision does not terminate a lease provision by itself"); *Abbadessa*, 120 Vt. at 355, 140 A.2d at 3 (absent landlord's acceptance of surrender, tenant still liable for rent). The duty to mitigate damages does nothing to affect a tenant's existing obligation under the lease to pay rent because our holding does not require landlord to accept a tenant's surrender. By imposing a duty to mitigate damages upon commercial landlords, the Court merely seeks to insure that these landlords respond reasonably to their tenants' abandonment. In fact, "[t]he duty to mitigate damages [does] not require [a commercial landlord] to sacrifice any substantial right of its own; or to exalt the interests of the tenant above its own." *Danpar Assocs. v. Somersville Mills Sales Room, Inc.*, 438 A.2d 708, 710 (Conn. 1980) (citation omitted).

## II.

Landlord next argues that, even if it had a duty to mitigate damages upon tenant's abandonment, the trial court erroneously found that landlord did not make reasonable efforts to relet the premises vacated by tenant. Specifically, landlord argues that: (1) the trial court's conclusion was unsupported by the record; (2) because the prospective tenant did not make a specific offer, landlord did not fail to mitigate its damages; and (3) because it succeeded in obtaining a higher paying tenant, the trial court could not have found that it failed to mitigate its damages.

Our standard of review is limited on challenges to the trial court's findings of fact.

Findings of fact challenged on appeal are not to be set aside unless, taking the evidence in the light most favorable to the prevailing party and excluding the effects of modifying evidence, they are clearly erroneous. When the evidence is conflicting, the credibility of the witnesses, the weight of the evidence and its persuasive effect are matters for the exclusive determination of the trier of fact, and although there may be inconsistencies or substantial evidence to the contrary, its determination must stand if supported by credible evidence.

*Beyel v. Degan,* 142 Vt. 617, 619–20, 458 A.2d 1137, 1138 (1983) (citations omitted); see also V.R.C.P. 52(a) (findings of fact will not be set aside unless clearly erroneous). The conclusions of the trial court will be upheld as long as "the findings of fact fairly and reasonably support them." *Goodrich v. United States Fidelity & Guar. Co.,* 152 Vt. 590, 596, 568 A.2d 385, 389 (1989).

■ Landlord first takes issue with the trial court's finding that landlord had refused to relet the premises to a potential replacement tenant. This finding was based on the testimony of Vivien Ginsberg, who testified that shortly after tenant abandoned the leased premises, she approached landlord seeking to rent the store. She explained her idea and was told that she "couldn't make an offer" for the space because landlord "had somebody lined up for it." In fact, there was no new tenant and the premises were not relet for another six months. On the basis of this record, we cannot conclude that the trial court's finding that landlord turned Ms. Ginsberg away was clearly erroneous.

■ Nonetheless, landlord argues that because Ms. Ginsberg did not make a concrete offer, it cannot be said to have failed to mitigate its damages. *Cartin v. Continental Homes of New Hampshire,* 134 Vt. 362, 367, 360 A.2d 96, 100 (1976) (burden of proving a failure to mitigate damages "is not met by merely arguing the possibility [of mitigation]; absent concrete evidence, the issue is speculative, since the result could well have been a greater, rather than a lesser, loss to the defendants"). Landlord cites *Bernstein v. Seglin,* 171 N.W.2d at 250, for support. In that case, the Supreme Court of Nebraska found that a landlord's failure to rent the abandoned premises to a prospective tenant did not constitute a failure to mitigate when that prospect did not make a concrete offer to lease. *Id.* There was no evidence in that case, however, that the landlord discouraged an offer. Rather, we find that this case is factually similar to *S.N. Mart, Ltd. v.*

*Maurices Inc.*, 451 N.W.2d 259 (Neb. 1990). There, a prospective tenant for a vacated space left several messages with the landlord's office about his interest in the leasehold, but the landlord did not respond. *Id.* at 261–62. On those facts, the Nebraska court concluded that the landlord had failed to mitigate its damages by refusing the overtures of the interested prospective tenant. *Id.* at 263. Here, landlord lied to and discouraged a potential tenant, and on these facts, we cannot conclude it was clearly wrong for the trial court to find that landlord unreasonably failed to mitigate its damages.

Landlord's final argument is that because it ultimately secured a tenant at a substantial increase in rent, its conduct was "eminently and objectively reasonable." When tenant abandoned the leased premises, landlord refused to entertain an offer from a prospective tenant. Instead, landlord decided to wait for a national chain store tenant—a tenant that could pay higher rent than the breaching tenant. This strategy took some time to accomplish and, in the end, provided a greater return to landlord than if the breaching party had fulfilled the original lease. Landlord's argument is that because its strategy turned out to be a profitable business decision, it cannot amount to a failure to mitigate. Landlord's argument misses the point. The issue is not whether landlord's conduct was sound from a business perspective or in hindsight. The issue is whether, having made the decision to refuse to entertain a prospective tenant and to pursue a national tenant, the landlord can charge the abandoning tenant with the risk and cost of its decision. We agree with the trial court's conclusion that landlord cannot impose the cost of its decision on the breaching tenant and recover rent for the waiting period from tenant.

*Affirmed.*