FRENCHTOWN SQUARE PARTNERSHIP, APPELLANT, *v.* LEMSTONE, INC., D.B.A. LEMSTONE BOOKS, APPELLEE.

[Cite as *Frenchtown Square Partnership v. Lemstone, Inc.,* 99 Ohio St.3d 254, 2003-Ohio-3648.]

(Nos. 2001–1165 and 2001–2259—Submitted February
12, 2003—Decided July 23, 2003.)

O'Connor, J.

### Preliminary Issue

{¶ 1} Before addressing the merits of this appeal, we resolve a procedural issue raised by Frenchtown Square Partnership ("Frenchtown").

{¶ 2} This case is before us as a consolidated appeal. On February 6, 2002, we accepted jurisdiction in case No. 2001–1165, the underlying case, solely to determine whether a landlord has a duty to mitigate damages caused by a tenant who breaches a commercial lease and abandons the leasehold. Subsequently, in case No. 2001–2259, Frenchtown petitioned us to accept jurisdiction over two procedural issues involving the same parties and transaction as in the underlying case. We consolidated Frenchtown's appeals; however, at no point did we accept jurisdiction over the issues raised in case No. 2001–2259, nor did we order the parties to brief those issues pursuant to the Rules of Practice of the Supreme Court. Accordingly, the only issue before us is whether a landlord has a duty to mitigate damages caused by a tenant who breaches a commercial lease and abandons the leasehold.

### Facts and Procedural History

{¶ 3} This case is before us from the Seventh District Court of Appeals, which affirmed in part and reversed in part summary judgment in Frenchtown's favor and held that Frenchtown bore a duty to mitigate its damages after Lemstone, Inc. ("Lemstone") breached its lease.

{¶ 4} Frenchtown owns Frenchtown Square Shopping Center, a mall located in Monroe, Michigan. Lemstone is an Illinois corporation doing business as a

Christian bookstore.[1]  On June 3, 1989, Frenchtown leased store space in its mall to Lemstone for a period of ten years.

{¶ 5} Frenchtown leased other mall space to Alpha Gifts, a business that, in 1998, began to sell items similar or identical to products sold by Lemstone. Lemstone argues that competition from Alpha Gifts reduced its profitability to the point where it could no longer meet its rent obligations under the lease. Approximately six months prior to lease expiration, Lemstone ceased conducting business at Frenchtown Square and abandoned its store space.  For the balance of the lease's term, Lemstone did not pay rent to Frenchtown, and Frenchtown did not relet the property.

{¶ 6} Frenchtown sued Lemstone for rent due, incidental fees, and taxes.[2] Lemstone answered that Frenchtown failed to mitigate its damages, and it filed multiple counterclaims.[3]  Ultimately, the trial court granted summary judgment in Frenchtown's favor on all issues.

{¶ 7} On appeal, Lemstone maintained ten assigned errors.  The appeals court affirmed the trial court's judgment in part but held that Frenchtown, as a commercial lessor, had a duty to mitigate damages when Lemstone abandoned the leasehold.  Accordingly, the appeals court remanded the case to the trial court to determine whether Frenchtown had properly mitigated its damages.

{¶ 8} From the Seventh District's judgment, Frenchtown filed the instant appeal.  This case is now before us as a discretionary appeal.

## Analysis

{¶ 9} A certain duality inheres to leases.  Specifically, because they are contractual instruments by which parties convey interests in real property, they are arguably susceptible of both contract law and property law principles.

{¶ 10} Under common law, a lessor bore no obligation to mitigate damages when a lessee abandoned the leasehold.  The common law allowed a lessor to "stand by and do nothing, arbitrarily refusing to accept any new tenant." Solomon, The Commercial Landlord's Duty to Mitigate Damages (Feb.1988), 122 N.J.Law. 31.

---

1.  Although the mall is located in Michigan and Lemstone is incorporated in Illinois, this action arose in Ohio because Frenchtown is an Ohio general partnership with offices in Youngstown, Ohio, and the lease is governed by Ohio law, pursuant to the lease's choice-of-laws provision.

2.  At the time that Frenchtown sued Lemstone, the lease term had not expired.  Since Frenchtown's complaint, the lease has expired, and claimed damages have reached $44,490.61, excluding interest.

3.  Lemstone counterclaimed that Frenchtown had breached the lease and tortiously interfered with its business relationship with its franchisees, and that a 1993 lease amendment was invalid.

{¶ 11} Fundamentally, a duty to mitigate did not exist because leases were viewed as transfers of property interests. The lessor did not simply permit the lessee to occupy the lessor's property; rather, the lessee owned an abstract portion of the land, albeit for a limited duration, and rent was a fixed obligation. "Thus, when a tenant abandoned the leasehold, he was viewed as having vacated his estate," not that of the lessor. *Rubin v. Dondysh* (1989), 146 Misc.2d 37, 45, 549 N.Y.S.2d 579.

{¶ 12} Conversely, under the common law of contracts, mitigation is a fundamental tenet of a damage calculus. Contracts are the mutual exchange of promises, with each party holding an expectation of certain obligations and benefits. Thus, contract law acknowledges that mitigation, otherwise known as the doctrine of avoidable consequences, may justly place an injured party "in as good a position had the contract not been breached at the least cost to the defaulting party." *F. Ent., Inc. v. Kentucky Fried Chicken Corp.* (1976), 47 Ohio St.2d 154, 159–160, 1 O.O.3d 90, 351 N.E.2d 121.

{¶ 13} As Frenchtown and Lemstone acknowledge, a "modern trend" is eroding the common-law approach of treating leases strictly as conveyances of real property. Barker, Commercial Landlords' Duty upon Tenants' Abandonment—To Mitigate? (Summer 1995), 20 J.Corp.L. 627. Many states, via legislative or judicial mandate, have addressed a commercial or residential lessor's duty to mitigate. *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.* (Tex. 1997), 948 S.W.2d 293, fn. 1. Although relatively few jurisdictions have expressly determined a commercial lessor's duty, the trend favors Lemstone.[4]

---

4. {¶ a} States that have expressly determined that commercial landlords bear no duty to mitigate include Alabama: See *Ex Parte Kaschak* (Ala.1996), 681 So.2d 197; Minnesota: See *Markoe v. Naiditch & Sons* (1975), 303 Minn. 6, 226 N.W.2d 289; New York: See *Holy Properties Ltd., L.P. v. Kenneth Cole Productions, Inc.* (1995), 87 N.Y.2d 130, 637 N.Y.S.2d 964, 661 N.E.2d 694; and Pennsylvania: See *Stonehedge Square Ltd. Partnership v. Movie Merchants, Inc.* (1998), 552 Pa. 412, 715 A.2d 1082.

{¶ b} States that are part of the modern trend include Arkansas: See *Baston v. Davis* (1958), 229 Ark. 666, 318 S.W.2d 837 (tenant who sublet property owed duty to mitigate upon sublessee's breach); Colorado: See *Schneiker v. Gordon* (Colo.1987), 732 P.2d 603 (duty to mitigate requires lessor to mitigate breach of commercial lease); Connecticut: See *Danpar Assoc. v. Somersville Mills Sales Room, Inc.* (1980), 182 Conn. 444, 438 A.2d 708 (landlord that sued for damages caused by lessee's breach is obligated to mitigate damages); Delaware: Del.Code Ann., Sections 5101 and 5507(d), Title 25; Idaho: See *Consol. Ag of Curry, Inc. v. Rangen, Inc.* (1996), 128 Idaho 228, 912 P.2d 115 (lessor of real property is obligated to mitigate damages if lessee fails to pay rent and abandons the leasehold); Iowa: See *Aurora Business Park Assoc., L.P. v. Michael Albert, Inc.* (1996), 548 N.W.2d 153 (stating, "In Iowa 'we are committed to the doctrine that when a tenant wrongfully abandons leased premises, the landlord is under a duty to show reasonable diligence has been used to relet the property at the best obtainable rent and thereby obviate or reduce the resulting damage.'" [Citations omitted.] Id. at 157.); Kansas: See *Gordon v. Consol. Sun Ray, Inc.,* (1965), 195 Kan. 341, 404 P.2d 949 (nonconsensual surrender of leasehold entitles lessor to damages mitigated by reasonable efforts to relet); Nebraska: See *S.N. Mart, Ltd. v. Maurices Inc.*

{¶ 14} Previously, this court refrained from determining whether a commercial landlord has a duty to mitigate his damages. In *F. Ent., Inc.*, we considered "whether the trial court applied the correct rule as to measure of damages for breach of the contract * * *." Id. at 156, 1 O.O.3d 90, 351 N.E.2d 121. Because the parties did no more than contract to enter into a commercial lease, *F. Ent., Inc.* did not implicate the transfer of a leasehold interest. Although we held that "recovery of damages by the prospective lessor is limited to only those damages arising from the breach which could not, by reasonable effort on his part without undue risk or expense, have been averted or reduced," we did not specifically address the question raised herein. Id. at 160, 1 O.O.3d 90, 351 N.E.2d 121.

{¶ 15} Further, in *Dennis v. Morgan* (2000), 89 Ohio St.3d 417, 417, 732 N.E.2d 391, we addressed "whether, absent specific provisions in the lease, a landlord's election to terminate a lease agreement releases a tenant from liability for rent not yet due at the time of eviction." We stated, "Lessees are potentially liable for rents coming due under the agreement as long as the property remains unrented. The important corollary to that is that *landlords have a duty, as all parties to contracts do,* to mitigate their damages caused by a breach. Landlords mitigate by attempting to rerent the property. Their efforts to do so must be reasonable, and the reasonableness should be determined at the trial level." (Emphasis added.) Id. at 419, 732 N.E.2d 391.

{¶ 16} In *Dennis,* we noted that certain real property leases are susceptible of contract-law principles, including mitigation. Because the duty to mitigate extends to lessors of real property, we need not explore the theoretical arguments that attempt to classify leases as conveyances of real property, as contracts, or as a hybrid of these two concepts. Accordingly, the narrow issue before us is whether the duty to mitigate is applicable to commercial leases.

{¶ 17} Frenchtown argues that failing to exempt commercial leases would create an incentive for tenants to abandon property, thereby encouraging vandalism and punishing the injured party. These are long-standing arguments against treating leases as contracts but do nothing to distinguish commercial leases from

---

(1990), 234 Neb. 343, 451 N.W.2d 259 (failure to mitigate bars recovery to the extent that damages could have been avoided by reasonable efforts); New Jersey: See *McGuire v. Jersey City* (1991), 125 N.J. 310, 593 A.2d 309 (holding that commercial lessors are bound by the same duty of mitigation as residential lessors); Oregon: See *U.S. Natl. Bank of Oregon v. Homeland, Inc.* (1981), 291 Ore. 374, 631 P.2d 761 (lessor of real property owes duty to mitigate its damages upon abandonment of leasehold); Texas: See *Austin Hill Country Realty, Inc.,* supra (barring contractual provision, lessor owes duty to mitigate its damages upon abandonment of leasehold); Vermont: See *O'Brien v. Black* (1994), 162 Vt. 448, 648 A.2d 1374 (lessor owes duty to mitigate its damages upon abandonment of commercial leasehold); and Wisconsin: See *First Wisconsin Trust Co. v. L. Wiemann Co.* (1980), 93 Wis.2d 258, 286 N.W.2d 360 (landlord may accept surrender of leasehold and terminate lease or take possession and mitigate its damages).

other types of leases. Further, there is merit to Lemstone's argument that a rule that permits landlords to "stand by and do nothing" while still reaping the benefit of its lease agreement would encourage vacant properties at least as much as a rule disfavoring mitigation. In fact, if Frenchtown did not take reasonable steps to relet its Frenchtown Square property following Lemstone's abandonment, then it contributed to the problem it asks us to prevent.

{¶ 18} In an attempt to distinguish commercial leases from other types of leases, Frenchtown argues that the overall mix of shopping-center tenants is a material aspect of the bargained-for performance in a shopping-center lease. Essentially, by employing contract-law principles, Frenchtown argues that a proper mix of tenants creates a synergistic effect, and a rule that encourages abandonment will detrimentally affect not only the lessor, but also the other tenants.[5] While we acknowledge that where two or more shops adjoin, a symbiotic relationship may exist, we decline to create a rule of law that distinguishes between single- and multishop commercial settings. The duty to mitigate arises in all commercial leases of real property, just as it exists in all other contracts.

{¶ 19} We emphasize that our holding does not require a lessor to accept just any available lessee. The duty to mitigate requires only reasonable efforts. Thus, the tenant mix may reasonably factor into a lessor's decisions to relet. Finally, whether the breaching tenant caused damages beyond the failure to pay rent is a measure of damages. Our holding that contract principles apply to the calculation of damages extends to all damages provable by the lessor. If the breaching tenant caused harm such that the lessor's profitability is affected, then that harm is compensable to the extent it is proved. This, as well as the reasonableness of introducing a replacement lessee, is a question for the trier of fact.

## Conclusion

{¶ 20} As we stated in *Dennis*, landlords owe a duty to mitigate their damages caused by a breaching tenant. That rule flows from the premise that modern leases are more than simply property-interest transfers; rather, leases possess contractual qualities that often include myriad covenants and duties and arise from a bargained-for relationship. In a practical sense, lessors and lessees contract for the use of property.[6] Accordingly, barring contrary contract provisions, a duty to mitigate damages applies to all leases.

---

5. If the overall mix of stores is as vital as Frenchtown asserts, we question why Frenchtown would opt for vacant premises and damages as opposed to pursuing a more profitable mix of stores.

6. See Barker, 20 J.Corp.L 627, 644 ("In a commercial context, many covenants are negotiated and altered from lease to lease. The increasing importance of covenants in commercial leases emphasizes that a modern commercial lease is predominantly an exchange of promises").

{¶ 21} We see no valid reason to exempt commercial leases from the duty to mitigate. A lessor has a duty to mitigate damages caused by a lessee's breach of a commercial lease if the lessee abandons the leasehold. The lessor's efforts to mitigate must be reasonable, and the reasonableness should be determined by the trial court. Failure to mitigate damages caused by a breach of a commercial lease is an affirmative defense.

{¶ 22} Accordingly, we affirm the appeals court's decision and remand this case to the trial court on the question of mitigation, and for a determination of damages.

Judgment affirmed.

Moyer, C.J., Resnick, F.E. Sweeney, Pfeifer, Bryant and Lundberg Stratton, JJ., concur.

Thomas F. Bryant, J., of the Third Appellate District, sitting for Cook, J.

---

David A. Fantauzzi, for appellant.

Nadler Nadler & Burdman Co., L.P.A., Donn D. Rosenblum and Peter B. Grinstein, for appellee.

Thompson Hine L.L.P., William C. Wilkinson, Dena M. Kobasic and Andrew H. Cox, urging reversal for amici curiae Simon Property Group, Inc., Glimcher Realty Trust, The Richard E. Jacobs Group, and Forest City Enterprises, Inc.