[Cite as *Arnett v. Bardonaro*, 2013-Ohio-1065.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

JAMES R. ARNETT, Trustee, et al.  :

                                                              :        Appellate Case No. 25371

         Plaintiff-Appellee/Cross-Appellant    :

                                                              :        Trial Court Case No. 08-CV-1223

v.                                                             :

                                                              :        (Civil Appeal from

FRANK BARDONARO, JR.                          :         Common Pleas Court)

                                                              :

         Defendant-Appellant/Cross-Appellee:

                                                              :

· · · · · · · · · · ·

O P I N I O N

Rendered on the 22nd day of March, 2013.

· · · · · · · · · ·

LOWELL T. WOODS, JR., Atty. Reg. #0068768, and VALERIE M. MUNAFO, Atty. Reg. #0088769), Taft Stettinius & Hollister LLP, 40 North Main Street, Suite 1700, Dayton, Ohio 45423
         Attorney for Plaintiff-Appellee/Cross-Appellant, James R. Arnett, Jr.

GLEN E. HAZEN, JR., Atty. Reg. #0036885, Law Office of Glen E. Hazen, Jr., 810 Sycamore Street, Fourth Floor, Cincinnati, Ohio 45202
         Attorney for Defendant-Appellant/Cross-Appellee, Frank Bardonaro, Jr.

· · · · · · · · · · · ·

FAIN, P.J.

         {¶ 1}    Defendant-appellant Frank Bardonaro, Jr. appeals from a judgment for

plaintiff-appellee James R. Arnett, Jr., as Trustee of the James R. Arnett Trust. Bardonaro contends that the trial court erred in awarding judgment on Arnett's claim for money damages resulting from Bardonaro's breach of a land contract involving the sale of a condominium and in overruling Bardonaro's motion for summary judgment on that claim. Bardonaro further contends that the trial court erred in finding that Arnett was not required to mitigate his damages and sell the condominium, once Bardonaro breached the contract. Bardonaro also argues that the trial court erred in awarding attorney fees in the amount of $101,232.88 when Arnett prevailed on only one of the three issues he pursued at trial. In a cross-appeal, Arnett contends that the trial court erred in finding that he had waived his contractual right to have Bardonaro pay the property taxes and condominium fees.

{¶ 2} We conclude that the trial court did not err in awarding judgment to Arnett on his breach of contract claim, or in overruling Bardonaro's motion for summary judgment. Furthermore, we conclude that Arnett was permitted to elect his remedy under the contract, and was not required to mitigate his damages by selling the condominium. We also conclude that the trial court did not abuse its discretion in its award of attorney fees to Arnett. Finally, we conclude that the trial court did not err in holding that Arnett waived his right to collect property taxes and condominium fees from the date of closing until he demanded that Bardonaro make those payments. However, we conclude that the trial court erred by not awarding Arnett taxes and fees that were incurred after he demanded that Bardonaro make those payments. Accordingly, that part of the judgment of the trial court denying Arnett's claim against Bardonaro for post-demand taxes and fees is Reversed, the judgment is Affirmed in all other respects, and this cause is Remanded for the trial court to re-calculate

damages.

## I.  Arnett and Bardonaro Enter Into a Land Contract

{¶ 3}    James Arnett, Jr., and Frank Bardonaro, Jr., met and became friends in the 1990's.    Around January 2001, Arnett loaned some money to Bardonaro, which was evidenced by checks written by Arnett and a promissory note.   Bardonaro was required to make monthly payments to pay off the promissory note.

{¶ 4}    Arnett, as Trustee of the James R. Arnett Trust, owned a condominium unit located at 1174 Nutmeg Court in Centerville.   He began renting the condominium to Bardonaro in January 2002.   On December 28, 2002, Arnett agreed to sell the condominium to Bardonaro pursuant to a Land Contract.   The purchase price for the condominium was $125,000, plus 9% annual interest, the total of which was to be paid in 147 consecutive monthly installments of $1,935.49, plus one final payment of $2,826.06.   The Land Contract provided that Bardonaro would be responsible for the payment of real property taxes, insurance, and condominium fees, beginning on January 1, 2003, the closing date.   The monthly payments under the Land Contract were scheduled to begin later, on July 15, 2006.

{¶ 5}    Under the terms of the Land Contract, failure to pay amounts due, or failure to comply with any term or condition of the contract not involving the payment of money, constituted an event of default.   If an event of default occurred, the Land Contract permitted Arnett to choose between a number of alternative remedies, including the option to  "declare all amounts remaining unpaid [under the Land Contract] immediately due and payable and bring suit against [Bardonaro]."

{¶ 6} After the closing date passed, Bardonaro failed to pay the real property taxes and condominium fees. Arnett continued to pay the taxes and fees. Arnett claimed the payment of these taxes and fees as deductions on his annual tax returns.

{¶ 7} In July 2006, Arnett began making the monthly installment payments under the Land Contract. In March 2007, Arnett contacted Bardonaro to inform him that Bardonaro was obligated to reimburse Arnett for the property taxes and condominium fees that Arnett had been paying since the closing date. Bardonaro refused to reimburse Arnett for these payments, and a dispute arose over how much money Bardonaro owed Arnett.

## II. Course of the Proceedings

{¶ 8} On February 4, 2008, Arnett, as Trustee of the James R. Arnett Trust, filed a complaint for money damages against Bardonaro, alleging breach of the Land Contract. Bardonaro did not make any monthly payments under the Land Contract after the complaint was filed.

{¶ 9} In April 2008, Arnett filed an amended complaint, repeating the breach of contract claim and adding an unjust enrichment claim, which was based on Arnett's payment of property taxes, insurance premiums, and condominium fees. At the end of April, Bardonaro sent an e-mail to Arnett alerting him that Bardonaro was giving the keys to the condominium to Bardonaro's attorney to be returned to Arnett.

{¶ 10} Bardonaro filed a motion for summary judgment on both counts of Arnett's complaint. The magistrate found that there were genuine issues of material fact relating to Arnett's claims. Bardonaro did not file any objections to the magistrate's decision concerning summary judgment. The trial court overruled Bardonaro's motion for summary

judgment.

{¶ 11}  A trial before the magistrate was conducted in February 2010.  Following the trial and the filing of post-trial briefs by the parties, the magistrate issued a decision, concluding, in part: (1) that the Land Contract provided for Bardonaro's payment of real estate taxes and condominium fees, but that the doctrine of waiver barred collection of those amounts, (2) that Arnett substantially performed under the Land Contract, (3) that Bardonaro defaulted under the Land Contract by failing to make monthly installment payments since March 2008, and repudiated the Land Contract by returning his keys to the condominium in April 2008, (4) that Bardonaro is not entitled to a reduction in damages based on Arnett's failure to mitigate damages, and (5) that the Land Contract is cancelled as of the date of judgment, pursuant to R.C. 5313.09.  The magistrate awarded Arnett damages in the amount of $192,653.01.  Both parties filed objections to the magistrate's decision.

{¶ 12}  The trial court found that the magistrate improperly cancelled the Land Contract, and that the magistrate's finding regarding repudiation was unnecessary.  The trial court overruled Bardonaro's objections to the magistrate's decision and granted, in part, and overruled, in part, Arnett's objections.  The trial court found that Bardonaro had breached the Land Contract by failing to make the required monthly payments, and that Arnett was not required to mitigate his damages and sell the condominium after Bardonaro's breach.  Regarding the property taxes and condominium fees, the trial court found that Arnett waived his right to collect the taxes and fees when he continued to pay them after the closing date.  The trial court concluded "that issues remain for the Magistrate to decide concerning an award of litigation expenses and attorney fees and damages caused by [Bardonaro's] abandonment of

the property."

{¶ 13} The magistrate held a hearing on attorney fees. Two attorneys who represented Arnett during the dispute with Bardonaro testified. Arnett introduced the billing invoices into evidence. The magistrate found that although Arnett prevailed on only one of three issues at trial, the issues involved a common core of facts, and it was impractical to separate out how much of Arnett's attorney fees involved the winning issue (breach of contract) versus the losing issues (condominium fees and property taxes). Nevertheless, the magistrate did not award the full amount of attorney fees requested by Arnett, because the magistrate found that there were not any novel or exceptionally difficult questions of law or fact involved in the suit, and that the results obtained, as compared with the total amount billed in legal services, militated against the reasonableness of the amount of attorney's fees requested. The magistrate concluded that $55,000 for attorney fees and costs was "reasonable and appropriate under the circumstances." Both parties objected to the magistrate's decision awarding attorney fees.

{¶ 14} The trial court overruled Bardonaro's objections and sustained Arnett's objections. The trial court rejected the magistrate's decision to reduce Arnett's attorney fees. According to the trial court, "the case may have seemed simple in hindsight but the case evolved into being a more intricate and more complex matter than at first glance." The trial court also found that the attorney fees "should not be adjusted downward solely based on the proportion of the attorney fees sought compared to the amount received." Based on a review of the testimony and evidence submitted, the trial court awarded attorney fees in the amount of $101,232.88. Both parties appealed.

**III. The Evidence in the Record Supports the Trial Court's Judgment**

**in Favor of Arnett on his Breach of Contract Claim**

{¶ 15}   Bardonaro's First Assignment of Error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT/CROSS-APPELLEE IN GRANTING JUDGMENT IN FAVOR OF APPELLEE/CROSS-APPELLANT ON HIS BREACH OF CONTRACT CLAIM.

{¶ 16}   Bardonaro contends that the trial court erred in granting judgment to Arnett on his breach of contract claim based upon Bardonaro's failure to pay his monthly obligations under the Land Contract.  According to Bardonaro, Arnett did not include in his breach of contract claim any allegation that Bardonaro failed to make the monthly payments under the Land Contract.  To the contrary, according to Bardonaro, Arnett based his breach of contract claim solely on Bardonaro's failure to pay property taxes and condominium fees. Furthermore, Bardonaro contends that Arnett accelerated the payments due under the Land Contract based solely on Bardonaro's failure to pay property taxes and condominium fees, not upon his failure to make the monthly installment payments of the purchase price.  Because the trial court found that Arnett had waived his right to collect the property taxes and condominium fees, Bardonaro contends that there remained no basis on which the trial court could enter judgment for Arnett on his breach of contract claim.  We do not agree.

{¶ 17}   The trial court found, in pertinent part:

The Land Contract unambiguously provides that default occurs when "Buyer fails to pay any amount due hereunder and such failure continues for a

period of five (5) days." In addition, the parties agreed to an enforceable acceleration clause, which permits the Seller upon default, and at his option, to "(i) declare all amounts remaining unpaid hereunder immediately due and payable and bring suit against Buyer for any and all liabilities, losses, costs, expenses, injuries and damages incurred by Seller as a result of such default, including without limitation, reasonable attorney's fees and litigation expenses . . ." Defendant defaulted by not making payments after February 2008, and Plaintiff exercised the option to accelerate the debt by bringing suit against Defendant for the entire amount owing under the Land Contract.[] *Amended Complaint*. Once Defendant defaulted and Plaintiff invoked the acceleration clause, the Land Contract became indivisible. The obligations to pay each installment merged into one obligation to pay the entire balance on the Land Contract. * * * There was already a total breach once Defendant defaulted and Plaintiff elected to accelerate the debt.

**{¶ 18}** In his amended complaint, Arnett alleged that "Bardonaro made monthly payments on the Land Contract, although certain monthly payments were not made in full." Amended Complaint, ¶ 11. Arnett also alleged that "Bardonaro failed to make payments in accordance with the express terms of the Land Contract, and has failed to timely remedy that default after notification of the same." *Id.* at ¶ 13. Furthermore, it is undisputed that Bardonaro failed to make any of the required monthly payments after February 2008. The allegations in the amended complaint put Bardonaro on notice that the failure to make monthly payments was part of the basis for Arnett's breach of contract claim. Indeed, the

parties showed in their numerous filings with the trial court, and in their presentation of evidence at the trial, that they both considered Bardonaro's failure to make monthly installment payments under the Land Contract to be part of Arnett's breach of contract claim.

{¶ 19} Bardonaro contends that his failure to make monthly payments after February 2008 cannot form the basis of Arnett's breach of contract claim. According to Bardonaro, "[o]nce Arnett alleged a breach of the Land Contract and invoked the acceleration clause, the land contract became indivisible. The obligations of Bardonaro to make future installment payments and payments for property taxes merged into one obligation to pay the entire balance on the land contract." Brief, p. 8. In support of his position, Bardonaro cites *U.S. Bank Natl. Assn. v. Gullotta*, 120 Ohio St.3d 399, 2008-Ohio-6268, 899 N.E.2d 937.

{¶ 20} Bardonaro's reliance on *Gullotta* is misplaced. In *Gullotta*, the Supreme Court was faced with a certified question involving a unique set of facts and a narrow legal issue. Specifically, *Gullotta* involved a bank's third attempt through a foreclosure action to accelerate payments under a promissory note, based on the homeowner's default. The first two lawsuits based on the homeowner's default had been voluntarily dismissed under Civ.R. 41(A). The Court was faced with the narrow question whether the two prior voluntary dismissals barred the third suit under the doctrine of *res judicata*. The Court began its analysis by making it very clear that:

> [t]he question certified to us defies an answer that can apply to all cases.
> * * * This case is this case. The significant facts here are that the underlying note and mortgage never changed, that upon the initial default, the bank accelerated the payments owed and demanded the same principal payment that

it demanded in every complaint, that Gullotta never made another payment after the initial default, and that U.S. Bank never reinstated the loan.  *Id.* at ¶ 18-19.

{¶ 21}  The Court then addressed whether each failure to make a monthly payment created a separate claim on which the bank could commence a third lawsuit against the party who defaulted.   The Court answered that question in the negative, holding:

> By agreeing to an acceleration clause, the parties in this case have avoided the operation of the general rule that nonpayment on an installment loan does not constitute a breach of the entire contract.  In a contract with an acceleration clause, a breach constitutes a breach of the entire contract.  Once Gullotta defaulted and U.S. Bank invoked the acceleration clause of the note, the contract became indivisible.  The obligations to pay each installment merged into one obligation to pay the entire balance on the note.  *Id.* at ¶ 31.

{¶ 22}  Bardonaro argues that once Arnett filed a complaint in February 2008 and demanded acceleration of the entire contract, Bardonaro was no longer required to make monthly payments under the Land Contract because, per *Gullotta*, "[t]he obligations to pay each installment merged into one obligation to pay the entire balance on the note." Furthermore, since Bardonaro was not in default at the time of the filing of the complaint in February 2008, there was no basis on which the trial court could find that Bardonaro breached the Land Contract by failing to make monthly installment payments.

{¶ 23}  We are not persuaded by this argument.   *Gullotta* found the contract indivisible only after the debtor defaulted and the creditor invoked the acceleration clause.

But Bardonaro argues that he had not defaulted at the time that Arnett filed the lawsuit against him. Therefore, even under a broad reading of *Gullotta*, the contract was not yet indivisible at the time that the complaint was filed. However, when Arnett filed his amended complaint in April 2008, Bardonaro was in default under the Land Contract for failing to make monthly payments, and Arnett had invoked the acceleration clause. Therefore, the trial court could find that Bardonaro had breached the Land Contract, which entitled Arnett to invoke the acceleration clause.

{¶ 24} Furthermore, we are inclined to read the holding in *Gullotta* more narrowly. The issue in that case was whether a second Civ.R. 41(A) dismissal, because it was with prejudice to the Bank's claim, operated as a bar, under the doctrine of res judicata, to a subsequent complaint based upon that claim. The Supreme Court held that it did. Here, Arnett's original complaint had not been adjudicated on the merits, by virtue of a second Civ.R. 41(A) dismissal, or otherwise, when he filed his amended complaint. Thus, the issue in this case is not whether a resolution of the claims set forth in the plaintiff's original complaint operated as a bar to the claims set forth in his subsequent (amended) complaint, unlike in *Gullotta*, where that was the issue.

{¶ 25} The record contains competent, credible evidence supporting the trial court's judgment in favor of Arnett on his breach of contract claim based on Bardonaro's failure to make the required monthly payments under the Land Contract. Consequently, Bardonaro's First Assignment of Error is overruled.

**IV. The Trial Court's Denial of Bardonaro's Motion For Summary Judgment**

**Is Rendered Moot or Harmless By the Judgment in Favor of Arnett**

{¶ 26}   Bardonaro's Second Assignment of Error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT/CROSS-APPELLEE IN OVERRULING HIS MOTION FOR SUMMARY JUDGMENT ALLEGING THAT APPELLEE/CROSS-APPELLANT BREACHED THE LAND CONTRACT BY NOT PROVIDING MONTHLY STATEMENTS AS REQUIRED UNDER THE LAND CONTRACT.

{¶ 27}   Paragraph 17 of the Land Contract provides as follows: "<u>STATEMENTS</u>: At least once a year, or on demand of Buyer, but no more than twice a year, Seller shall furnish a statement to Buyer showing (a) the amount credited to principal and interest under this Land Contract and (b) the balance due."  It is undisputed that Arnett did not send these annual statements to Bardonaro.

{¶ 28}   In his motion for summary judgment, Bardonaro contended that Arnett could not establish the second element of a breach of contract claim:   that the claimant had fulfilled his contractual obligations.   The magistrate rejected Bardonaro's argument, finding that: "[Arnett] claims that [Bardonaro] was given an amortization table at the beginning of the contact [sic] and several times thereafter, showing the required information.   Accordingly, there is a genuine issue of material fact as to whether the documentation provided was sufficient to satisfy [Arnett's] contractual obligations."   The trial court subsequently adopted the reasoning of the magistrate, and overruled Bardonaro's motion for summary judgment.

{¶ 29}   The trial court properly denied Bardonaro's motion for summary judgment.

At that time, there remained genuine issues of material fact regarding whether the documentation provided by Arnett was sufficient to satisfy his contractual obligations and whether the failure to provide the annual statements was a material breach that would excuse Bardonaro's performance.

{¶ 30}   Furthermore, following a trial, the trial court held that R.C. 5314.04 provides the proper remedy for a buyer who does not receive the required annual statements, and Bardonaro failed to take advantage of this remedy. Generally, "the denial of a motion for summary judgment is not a point of consideration in an appeal from a final judgment entered following a trial on the merits._ *Continental Ins. Co. v. Whittington*, 71 Ohio St. 3d 150, 156, 642 N.E. 2d 615 (1994).  If a trial court denies a motion for summary judgment due to the existence of genuine issues of material fact, and a subsequent trial results in a verdict for the party who did not move for summary judgment, then any error in denying the motion for summary judgment is rendered moot or harmless.  *Id.* at syllabus.

{¶ 31}   In the case before us, the trial court found that there were genuine issues of material fact requiring a trial.   After hearing the testimony from both parties, the trial rendered a verdict in favor of Arnett, the party who had not moved for summary judgment. Therefore, the trial court's ruling on Bardonaro's motion for summary judgment was rendered moot or harmless by the subsequent judgment.

{¶ 32}   Bardonaro's Second Assignment of Error is overruled.


### V. The Land Contract Provided for a Selection of Remedies, and Arnett Was Not Required to Sell the Property to Mitigate his Damages

**{¶ 33}** Bardonaro's Third Assignment of Error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT/CROSS-APPELLEE BY RULING THAT THE APPELLEE/CROSS-APPELLANT COULD ACCELERATE WITHOUT MITIGATING DAMAGES.

**{¶ 34}** Paragraph 15 of the Land Contract provides, in part:

DEFAULT: The following shall constitute an event of default under this Land Contract:

    a. Buyer fails to pay any amount due hereunder and such failure continues for a period of five (5) days.

    b. Buyer fails to comply with any term or condition of this Land Contract other than those regarding the payment of money.

    * * *

Upon the occurrence of an event of default, Seller may, at his option, do any of the following: (i) declare all amounts remaining unpaid hereunder immediately due and payable and bring suit against Buyer for any and all liabilities, losses, costs, expenses, injuries and damages incurred by Seller as a result of such default, including without limitation, reasonable attorneys' fees and litigation expenses; (ii) if applicable, seek a forfeiture of this Land Contract in accordance with applicable laws; (iii) foreclose on this Land Contract; or (iv) exercise any other rights and remedies available at law or in equity. * * * Seller's remedies, whether arising under this Land Contract or otherwise

available at law or in equity, are cumulative, and Seller's exercise of any remedy shall not be deemed to limit or supersede any remedy otherwise available.

{¶ 35} The trial court held that Arnett properly elected his remedy under the Land Contract. The court found, in pertinent part:

Defendant did not repudiate or cancel the contract in April 2008 when he sent his keys to Plaintiff's counsel, and, as a result, Defendant continues to hold equitable title. * * * Defendant argues that R.C. 5313.07, R.C. 5313.09, and accompanying case law permit buyers under a land installment contract to cancel or terminate a land contract. R.C. 5313.07 provides, "[c]hapter 5313 of the Revised Code does not prevent the vendor *and* vendee from canceling their interest in a land installment contract *under 5303.331 of the Revised Code*." (Emphasis added.) Therefore, if a vendor and vendee agree to cancel their interest in a land installment contract they can do so by following the procedures provided in R.C. 5303.331. This did not occur in this case. Under both the Land Contract and R.C. 5313, only Plaintiff, as vendor, had foreclosure and forfeiture as possible remedies, and he lawfully chose not to pursue either of them. It would be erroneous for this Court to require Plaintiff to pursue a remedy that he did not elect through the mitigation doctrine.

Defendant argues that if a party invokes an acceleration clause that party must mitigate his damages and cites *French Town Square Partnership v. Lemstone, Inc.*, 99 Ohio St.3d 254, 257, 2003-Ohio-3648, 791 N.E.2d 417 in

support. *French Town Square* does not support Defendant's argument. In *French Town Square*, the Ohio Supreme Court held that "[t]he duty to mitigate arises in all commercial leases of real property, just as it exists in all other contracts." 2003-Ohio-3648, at ¶ 18. The Court stated that under common law, leases were viewed as transfers of property interests, and, as such, a duty to mitigate did not exist. Id. at ¶ 10-11. "Conversely, under the common law of contracts, mitigation of damages is a fundamental tenet of a damage calculus." Id. at ¶ 12. The Court noted that the "modern trend" is to treat leases less like conveyances of real property, thereby making ordinary contract principles applicable. Id. at ¶ 13. Notably, this case involves acceleration of a debt under a land installment contract, not a lease agreement. Defendant's statement of the law is incorrect. Common sense dictates that a vendor who elects to accelerate the balance due under a land installment contract does not have a duty to mitigate.

{¶ 36} Bardonaro contends that the trial court erred by finding that Arnett could accelerate the monthly payments under the Land Contract without also mitigating Arnett's damages. According to Bardonaro, once Arnett exercised his right to accelerate the payments under the Land Contract, Arnett had a corresponding duty to mitigate his damages by selling the condominium. We do not agree.

{¶ 37} The Land Contract provided a choice of remedies that Arnett could pursue when Bardonaro breached his duties under the Land Contract. Arnett was not obligated, as Bardonaro contends, to sell the condominium after Bardonaro stopped making payments

under the Land Contract. Arnett could, and did, choose to exercise the option of accelerating the payments under the Land Contract and bringing a suit against Bardonaro to compel the performance of the contract. In other words, he could elect to receive the purchase price in exchange for the property, which was the benefit of the bargain he negotiated with Bardonaro. Arnett properly elected his remedy pursuant to the Land Contract.

{¶ 38} Bardonaro cites the decision of the Supreme Court of Ohio in *French Town Square, supra* (cited in the trial court's decision quoted above), in support of his proposition that Arnett was obligated to mitigate his damages and sell the condominium after Bardonaro's breach of the Land Contract. In *French Town Square*, however, the Supreme Court noted that the modern trend was to treat leases less like conveyances of real property, which would make ordinary contract principles like the doctrine of mitigation of damages applicable to leases. But the Land Contract before us is a transfer in real property, not a lease. Consequently, Arnett was permitted to elect his remedy under the Land Contract, and was not required to mitigate his damages through a sale of the condominium.

{¶ 39} Bardonaro's Third Assignment of Error is overruled.

## VI. Arnett Waived His Right to Have Bardonaro Pay Any Property Taxes And Condominium Fees From The Date of Closing Until Arnett Demanded Payment From Bardonaro In March 2007

{¶ 40} Arnett's assignment of error in his cross-appeal states:

THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT ARNETT WAIVED HIS RIGHT TO COLLECT PROPERTY TAXES AND

CONDOMINIUM FEES FROM BARDONARO.

{¶ 41} The Land Contract provided that Bardonaro was obligated to pay the property taxes and condominium fees after the closing date, January 1, 2003. Arnett contends that the trial court erred in concluding that he waived his right to collect these property taxes and condominium fees. According to Arnett, his failure to collect the taxes and fees was akin to an administrative oversight, and did not constitute an intentional relinquishing of his right.

{¶ 42} Waiver is a voluntary relinquishment of a known right and is generally applicable to all personal rights and privileges, whether contractual, statutory, or constitutional. *Glidden Co. v. Lumbermans Mut. Casualty Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶ 49 (Citations omitted.) The trial court found that Arnett waived his contractual right to have Bardonaro pay the condominium fees and property taxes. The court found, in part:

> The greater weight of the evidence establishes that Plaintiff waived his right to receive real property taxes and condominium fees from Defendant. The Magistrate correctly concluded that Plaintiff waived his right to receive condominium fees from Defendant. Plaintiff knew that Defendant was contractually obligated to pay the condominium fees. The Land Contract became effective as of January 1, 2003, however, Plaintiff continued to pay the monthly condominium fees and had the fees automatically deducted from his checking account. Plaintiff waited until February 2007 to ask Defendant for the condominium fees that Plaintiff paid. Plaintiff acted inconsistently with his right to collect condominium fees from Defendant.

The Court further finds that the Magistrate correctly concluded that Plaintiff waived his right to receive real property taxes. Pursuant to the Land Contract, Defendant was required to pay the taxes after the closing date on January 1, 2003. Plaintiff signed the Land Contract and, as such, cannot argue that he was not aware of its terms. Plaintiff paid the property taxes for over three years before requesting payment from Defendant in February 2007.

{¶ 43} It is undisputed that Arnett continued to pay the fees and property taxes after the closing date, January 1, 2003. Furthermore, Arnett reported these payments on his annual tax returns and received tax benefits as a result. Based on this evidence, we conclude that the trial court did not err in holding that Arnett had waived his right to collect payments he made for fees and taxes incurred after the date of closing, up to March 2007.

{¶ 44} Arnett also contends that even if he had waived his right to collect past fees and property taxes, he did not waive this right with respect to Bardonaro's future obligation to pay property taxes and condominium fees. In other words, once Arnett alerted Bardonaro in March 2007 that Bardonaro was responsible for paying these fees and taxes, there was no longer any action or inaction to support a waiver of Bardonaro's future obligation to pay fees and taxes. We agree with Arnett on this point. Once Arnett demanded payment from Bardonaro for condominium fees and property taxes, in March 2007, Bardonaro was on notice that Arnett intended to enforce his contractual right to have Bardonaro pay the fees and taxes in the future. Although Arnett is not entitled to reimbursement for fees and taxes paid prior to March 2007, he is entitled to reimbursement for the fees and taxes he paid after March 2007.

{¶ 45}  Arnett's sole assignment of error is overruled, in part, and sustained, in part.

### VII. The Amount of Attorney's Fees Awarded to Arnett
### Is Not Against the Manifest Weight of the Evidence

{¶ 46}  Bardonaro's Fourth Assignment of Error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT/CROSS-APPELLEE IN AWARDING APPELLEE/CROSS-APPELLANT ATTORNEY'S FEES IN THE AMOUNT OF $101,232.88.

{¶ 47}  In this assignment of error, Bardonaro first contends that the trial court erred in awarding attorney fees to Arnett, because the trial court should not have rendered judgment for Arnett on his breach of contract claim.  As discussed in Part III, above, in the disposition of Bardonaro's First Assignment of Error, the trial court properly awarded judgment in favor of Arnett.  Consequently, we reject this contention.

{¶ 48}  Bardonaro next contends that even if the trial court correctly rendered judgment for Arnett, Arnett failed to provide sufficient evidence to support an award of attorney fees.  According to Bardonaro, only a portion of the attorney fees incurred by Arnett related to the successful breach of contract claim, and the trial court erred by awarding fees relating to Arnett's request for reimbursement of past property taxes and condominium fees, issues on which Arnett did not prevail at trial.

{¶ 49}  In *Unick v. Pro-Cision, Inc.*, 7th Dist. Mahoning No. 09 MA 171, 2011-Ohio-1342, the Seventh District Court of Appeals explained the proper analysis when a

party requests attorney fees.   The Seventh District wrote, at ¶ 27-30:

> Although a contractual provision may entitle a prevailing party to attorney's fees, the prevailing party still has the burden of proving the reasonableness of the fees.  * * *  A trial court's determination of reasonable attorney's fees must generally begin with a calculation of _the number of hours reasonably expended on the case times an hourly fee._ * * * This _lodestar figure_ has been determined to be _[t]he most useful starting point for determining the amount of a reasonable fee,_ because it _provides an objective basis on which to make an initial estimate of the value of a lawyer's services._ * * *

> In order to establish this minimum baseline for the determination of attorney fees, the party requesting the award bears the burden of providing evidence of any hours worked that would be properly billed to the client.   The hours worked should be necessary to the action and should not include _hours that are excessive, redundant, or otherwise unnecessary._ * * *  The requesting party _should exercise _billing judgment_ with respect to hours worked, * * * and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims_. * * * Even in the event that an attorney provides representation on a contingent-fee basis, the attorney must _keep an accurate record of time and resources expended_ in order to be able to provide satisfactory proof of the reasonable value of the legal services rendered. * * *

The requesting party also bears the burden of proving the attorney's hourly rate, and of establishing that the hourly rate is reasonable. _[T]he burden is on the fee applicant to produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation._ *Blum v. Stenson* (1984), 465 U.S. 886, 895_896, 104 S.Ct. 1541, 79 L.Ed.2d 891, at fn. 11.

Once the requesting party has adequately proven an appropriate number of hours worked and the attorney's reasonable hourly fee, the trial court may modify the baseline calculation by considering the factors listed in former DR 2_106(B), now found in Prof. Cond. R. 1.5, which include _the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation._ * * *

**{¶ 50}** In addition to the above framework, a court faced with a fee request should keep in mind that where "the claims can be separated into a claim for which fees are

recoverable and a claim for which no fees are not recoverable, the trial court must award fees only for the amount of time spent pursuing the claim for which fees may be awarded." *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145, 569 N.E.2d 464 (1991), citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). We review the trial court's aware of attorney fees for an abuse of discretion. *Bittner.*

{¶ 51} The Land Contract provides that in the event that Bardonaro defaulted under the contract, Arnett could "declare all amounts remaining unpaid hereunder immediately due and payable and bring suit against Buyer for any and all * * * damages incurred by Seller as a result of such default, including without limitation, reasonable attorneys' fees and litigation expenses[.]" The trial court found that the Land Contract entitled Arnett to reasonable attorney fees incurred in pursuit of his successful breach of contract claim.

{¶ 52} The trial court conducted the proper analysis, as described by the Seventh District Court of Appeals in *Unick*. At the hearing on attorney fees, two of the attorneys who represented Arnett in his dispute with Bardonaro testified regarding the amounts they billed Arnett for legal services, and whether these amounts were reasonable. We have reviewed this testimony and the invoices that were introduced into evidence at the attorney fee hearing. The evidence in the record supports the trial court's fee award. Furthermore, we agree with the trial court that the claims in Arnett's amended complaint involved a common core of facts, making it difficult to separate "a claim for which fees are recoverable and a claim for which no fees are recoverable." *Bittner.* Also, based on our disposition of Arnett's cross-appeal, as set forth in Part VI, above, we are reversing the trial court's judgment to the extent that it held that Arnett had waived his right to property taxes and condominium fees incurred after March

2007. Therefore, Arnett did in fact prevail on a portion of the two remaining issues (condominium fees and property taxes) in his amended complaint. And, on the record before us, the attorney fees are not capable of separation between the work done on the claim for taxes and fees before March 2007, on which Arnett has not prevailed, and the work done on the claim for taxes and fees after that date, on which Arnett has prevailed, as a result of this appeal.

**{¶ 53}** Based on the evidence in the record, we conclude that the trial court did not abuse its discretion in awarding attorney fees to Arnett in the amount of $101,232.88. Consequently, Bardonaro's Fourth Assignment of Error is overruled.

## VIII. Conclusion

**{¶ 54}** Arnett's sole assignment of error in his cross-appeal having been sustained, in part, and all of Bardonaro's assignments of error having been overruled, the judgment of the trial court judgment is Reversed, in part, and this cause is Remanded for the re-calculation of damages. The judgment of the trial court is Affirmed in all other respects.

. . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Lowell T. Woods, Jr.
Valerie M. Munafo
Glen E. Hazen, Jr.
Hon. Michael Krumholtz